MARY H. KLEIN *vs*. PRESIDENT AND FELLOWS OF
HARVARD COLLEGE.

No. 86-380.

Middlesex. January 14, 1987. — December 28, 1987.

Present: PERRETTA, QUIRICO, & KASS, JJ.

*Contract*, Employment. *Words*, "Just cause."

On appeal of an action seeking damages for breach of an employment
contract arising from the plaintiff's dismissal from her administrative
position at a university this court, assuming without deciding that the
trial judge was correct in his conclusions that the plaintiff's employment
was neither at-will nor subject to a period of probation, held that, on
facts found by the judge, there was just cause for the plaintiff's discharge,
and consequently, that her dismissal did not constitute a breach of her
employment agreement. [207-209]

CIVIL ACTION commenced in the Superior Court Department
on April 2, 1982.

The case was heard by *Alan J. Dimond*, J.

*Allan A. Ryan, Jr.*, for the defendant.

PERRETTA, J. After serving as the administrative director
of the department of health policy and management at the
Harvard school of public health (the department) for eighty-one
days, the plaintiff was discharged from her employment by
the department's dean of academic affairs (the dean). The
plaintiff then brought an action in the Superior Court seeking
damages for breach of her employment contract. After a bench
trial, the judge found that, although the dean had had cause
to discharge the plaintiff, he had not dismissed her on that
basis. Rather, the dean had discharged the plaintiff as if she
were a probationary employee who could be let go at any time
during the probationary period. The judge further found that
the defendant's normal probationary period for its employees

was inapplicable to the plaintiff. He concluded that, because
the plaintiff could not be discharged as a probationary employ-
ee, her dismissal constituted a breach of her employment agree-
ment.[1] On the facts found by the judge, we conclude that, if
the plaintiff was not a probationary employee, she was nonethe-
less an employee who was fired in good faith for reasons
amounting to just cause. We reverse.

I. *The Facts.*

As found by the judge, the facts are as follows. Pursuant to
an oral employment agreement, the plaintiff began work at the
department on January 7, 1980. Her employment was to con-
tinue only until such time as a new chairman of the department
should be appointed. It was anticipated that the appointment
would be made in "about one year." However, that appointment
also "could be made sooner." In any event, once the appoint-
ment was made the plaintiff's employment was to end, and
she would not thereafter be entitled to further employment at,
or any benefits from, Harvard University (the university). Her
salary was set at the rate of $21,000 a year, or $1,750 a month.

At the time of the plaintiff's employment, the university had
in effect a personnel manual which applied to all new non-fac-
ulty, noncollective bargaining employees. The plaintiff was
such an employee. Section 3-1 of the manual provided that
the first three months of employment would be a probationary
period. During that time, the employee and the employee's
supervisor (here, the dean) were to consider and evaluate the
suitability of the employment placement. Any "decision to
terminate the staff member should be made within the three
month probationary period if at all possible."

Problems began soon after the plaintiff started work. Her
relationships with certain (but not all) faculty members within

---

[1] The plaintiff also filed a notice of appeal from the judgment in her favor.
The basis for her appeal is unknown. Although the appeal was entered in
this court, the plaintiff failed to file a brief as either an appellee or an
appellant, and she did not appear at oral argument. We have allowed the
defendant's motion to dismiss the plaintiff's appeal pursuant to Mass.R.A.P.
19(c), 365 Mass. 868 (1974).

the department "became strained and acrimonious." When some time in March the dean polled the department faculty members concerning the plaintiff's job performance, the results were not good. Some of the faculty members found the plaintiff difficult to work with, not helpful to them in carrying out their employment obligations and, in general, not a good administrator.

Matters apparently came to a head on March 20, 1980, when the plaintiff sent a memorandum to the department's executive committee concerning a specific faculty member. She complained of his ability and personality in "intens[e]" words of "vehement disparagement."[2] The dean learned of the memorandum, and he met with the plaintiff on March 24th. By that time, the dean had concluded "reasonably and in good faith" that the plaintiff "was not the type of person who fulfilled the needs" of the department and that she was "not a facilitator who could meet the requirements of the job description for her position." When the dean met with the plaintiff on March 24th, he discussed her job performance and told her that her memorandum to the executive committee was "ill-conceived."

On March 28, 1980, the dean advised the plaintiff in writing that "regretfully, we have to terminate your services." She was instructed to turn in her keys and identification badge that day and that upon doing so, she would "be given a check for . . . [her] next two weeks pay."

This letter of discharge prompted the plaintiff to write to the president of the university and set out what she perceived to be the "dishonest and sometimes irrational administrative conduct" of three department members who, she accused, were

---

[2] In her memorandum, the plaintiff charged that the faculty member's judgment was "seriously impaired," that his "use of authority" was "inappropriate and potentially liability-creating," that she should not "allow" him to feel "encouraged" by silence on her part to "make rash, inaccurate and intentionally destructive statements" about her, that his criticisms of her were "totally delusive and bespeak a distorted administrative perception," that he had "ranted and raved" at her, that he "seems compelled to sacrifice someone to satisfy his need to be important," that he would "falsify" a situation to "strengthen his position," and that he had "aberrant perceptions" about the plaintiff.

"encouraged" by the dean. She levelled charges of dishonesty concerning "fudging the budget" and "deliberate efforts to mis-allocate federal as well as private funds." The plaintiff diag-nosed one of the main problems of the department as being the dean's decision "to confide" only with those faculty mem-bers having the "most widely acknowledged mental problems." Those faculty members were identified by the plaintiff in her letter. She advised the president that, if she did not hear from him within a week, she would relate her observations to the Federal and private funding agencies involved.[3]

It appears from the transcript that the plaintiff sought and received some type of review within the university concerning her dismissal. She did not, however, meet with success.

II. *Discussion.*

No contention was made at trial that the plaintiff, during her employment interview, was shown the personnel manual in its entirety or that her attention was directed to § 3-1 of the manual. The defendant did present evidence that the plaintiff was orally advised of the probationary period during her inter-view; however, the plaintiff denied that fact. The judge resolved this dispute in the testimony in the plaintiff's favor on the following basis: "Memories here can be faulty but where it would have been so easy for Harvard, in negotiating with the plaintiff for employment, to have given her a copy or extract of the relevant pages of the manual or to have given her, upon making the actual offer of employment, a letter containing its provisions, I will resolve the doubts here against Harvard."

We think it implicit from the judge's findings of fact and conclusions of law that he construed the plaintiff's employment agreement to be one for a definite period of time (from Janu-ary 7, 1980, until a new chairman should be appointed) and, therefore, that the plaintiff was not an at-will employee.[4] As-

---

[3] There is nothing in the record to show that the plaintiff further discussed her allegations with the president or with any funding agency.

[4] See *Mahoney* v. *Hildreth & Rogers Co.*, 332 Mass. 496, 499 (1955), and cases therein cited. Compare *Harper* v. *Hassard*, 113 Mass. 187, 189-190 (1873); *Maddaloni* v. *Western Mass. Bus Lines, Inc.*, 386 Mass.

suming without deciding that the judge was correct in his conclusions that the plaintiff's employment was neither at-will nor subject to a period of probation, we do not think that it follows that her discharge was in breach of the employment agreement.

Even if the plaintiff's employment was for a set, specific period of time, neither her agreement with the university nor the law guaranteed her employment for that period irrespective of her job performance. See *Mahoney* v. *Hildreth & Rogers Co.,* 332 Mass. 496, 499 (1955). According to the terms of the plaintiff's letter of appointment to her position, she was subject to removal "for grave misconduct or whenever . . . [her] duties are not satisfactorily discharged." We need not look to "grave misconduct" and instead construe (for purposes of this case) "not satisfactorily discharged" as meaning for just, good, or due cause at least, but not more.

Terms such as "just cause" and like phrases have been construed in similar or analogous contexts as meaning: "[T]here existed (1) a reasonable basis for employer dissatisfaction with a new employee, entertained in good faith, for reasons such as lack of capacity or diligence, failure to conform to usual standards of conduct, or other culpable or inappropriate behavior, or (2) grounds for discharge reasonably related, in the employer's honest judgment, to the needs of his business. Discharge for a 'just cause' is to be contrasted with discharge on unreasonable grounds or arbitrarily, capriciously, or in bad faith." *G & M Employment Serv., Inc.* v. *Commonwealth,* 358 Mass. 430, 435 (1970). See also *Amoco Oil Co.* v. *Dickson,* 378 Mass. 44, 47-48 (1979), and cases therein collected.

On the facts found by the judge, the plaintiff's dismissal was for cause. That basis was not recited to the plaintiff on March 28th because the dean "preferr[ed] to act under his assumed broader authority that he would be properly exercising if the plaintiff was a probationary employee." The judge further found that, in discharging the plaintiff, the dean "acted consid-

877, 879 & nn. 2 & 3 (1982). See generally 1A Corbin, Contracts § 152 (1963); 53 Am. Jur. 2d § 27 (1970).

erately, with restraint, and with no ulterior motive." His action was in no way retaliatory to the plaintiff because of her allegations and views of the department.

Further, the dean's failure to recite the cause with specificity in his letter of dismissal to the plaintiff may well have been motivated by his consistently considerate and restrained attitude toward the plaintiff. Cf. *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300, 306 (1982) ("As a kindness to an employee in his seeking future employment, an employer may well not state its reasons fully and accurately").[5] The important point is that the plaintiff, notwithstanding the letter of dismissal, knew why her employment was terminated. The testimony of the plaintiff (as well as the dean) and the letters she wrote to the executive committee and the president (after her discharge) show that she knew she was having difficulty and problems in performing the obligations of her employment, even though she attributed those difficulties to other members of the department. Any notions the plaintiff might have entertained that she was doing her work diligently and competently and that her conduct was appropriate were reasonably dispelled on March 24th, when the dean met with her and discussed her job performance and "ill-conceived" memorandum to the executive committee.

III. *Conclusion.*

As there was just cause for the plaintiff's discharge, her dismissal did not constitute a breach of her employment agreement. Accordingly, the judgment is reversed and the matter remanded to the Superior Court for entry of a new judgment dismissing the action.

*So ordered.*

---

[5] The judge also found that "there was no intent or purpose by . . . [the dean] or anyone else to cause the plaintiff mental or emotional distress or to deny, hamper or interfere with her opportunities for future employment or benefits at Harvard or elsewhere," as alleged by the plaintiff.