822 A.2d 423

Catherine DELAUTER and Doris E. James,
Personal Representatives of the Estate
of Beulah L. Deibert

v.

Charles E. SHAFER, Jr.

No. 86, Sept. Term, 2000.

Court of Appeals of Maryland.

May 2, 2003.

318

Paul D. Raschke, Alan A. Abramowitz (James D. Cathell, Sr., on brief), Charles E. Kountz, Jr., Baltimore, for apellants.

William C. Wantz, Hagerstown, for appellee.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, J.

The first issue presented in this case is whether the undisputed facts established the existence of a lease for a farm owned by the estate of Beulah Deibert, with Charles Shafer as a tenant.[1] If the facts established the existence of a lease, then this Court must reach the issue of whether Maryland Code (1974, 1996 Repl.Vol., 2002 Supp.) § 8–107 of the Real Property Article, applies to such lease so as to vest the title to the farm in the respondent, Charles Shafer, or whether the statute is limited to long term ground rent situations.[2] We

---

**1.** Maryland Code (1974, 1996 Repl.Vol., 2002 Supp.), § 1–101(h) of the Real Property Article, provides that " 'Lease' means any oral or written agreement, express or implied, creating a landlord and tenant relationship, including any 'sublease' and any further sublease."

**2.** Section 8–107 of the Real Property Article states as follows:

"If there is no demand or payment for more than 20 consecutive years of any specific rent reserved out of a particular property or any part of a particular property under any form of lease, the rent conclusively is presumed to be extinguished and the landlord may not set up any claim for the rent or to the reversion in the property out of which it issued. The landlord also may not institute any suit, action, or proceeding to recover the rent or the property. However, if the

shall hold that, as a matter of law, Shafer failed to establish the existence of a lease between himself and the Deiberts. Consequently, we shall not reach the issue of whether § 8–107 of the Real Property Article applies to leases other than those for long term ground rents. In addition, we shall not reach an alternative argument by the petitioner concerning the timeliness of Shafer's counterclaim for a declaratory judgment in light of Maryland Code (1974, 2001 Repl.Vol.), § 8–103 of the Estates and Trusts Article.[3]

## I.

In July 1942, Walter and Beulah Deibert purchased a 121 acre farm on the Downsville Pike in Washington County, Maryland. The farm was the site of the family home until 1957 when the Deiberts purchased another lot across the street and built a new home. Charles Shafer, who married the Deibert's daughter, Jeanette, in 1944, testified that Walter Deibert asked him to move to the Deibert farm in the spring of 1968, to help Deibert farm the land. At that time, the Shafers had been living with his parents. Charles and Jeanette Shafer moved to the Deibert farm in March 1968, and Shafer continued to reside at the farm after Jeanette Shafer's death in May 1998. During this time, relations between the Shafers and the Deiberts were cordial; they were "family for fifty-seven years," according to Shafer. He also testified that the Deiberts were at the farm every day during "working time."

---

landlord is under any legal disability when the period of 20 years of nondemand or nonpayment expires, he has two years after the removal of the disability within which to assert his rights."

3. Section 8–103 provides in part as follows:

"(a) General.—Except as otherwise expressly provided by statute with respect to claims of the United States and the State, all claims against an estate of a decedent, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort or other legal basis, are forever barred against the estate, the personal representative, and the heirs and legatees, unless presented within the earlier of the following dates:

(1) 6 months after the date of the decedent's death . . . . "

While the Shafers occupied the farm, the arrangement was informal, and never reduced to writing. Shafer testified that Walter Deibert had asked the Shafers to pay the Deiberts $125 per month, purportedly to help pay for taxes and insurance on the property. In fact, the Shafers made no such regular payment. From the time they moved in to the date of Mrs. Deibert's death in November 1998, Shafer had paid the Deiberts a total of $750.00 by two checks, the first dated May 29, 1968, and the second dated October 1, 1970. Shafer admitted in his testimony that there was no indication at the time of payment that the checks were for rent. Throughout the period of Shafer's occupancy, the Deiberts paid the property taxes on the farm. Shafer testified that he paid insurance on only the four buildings he considered his own, a hogpen, a cattle feeding station and two machine sheds that he had constructed on the property. The Deiberts continued to pay insurance for all other buildings on the property and the farmland.

The Deiberts assisted the Shafers financially several times over the years. In 1967, the Deiberts co-signed two bank loans for Shafer. In 1984, the Deiberts loaned $1,300 to the Shafers. There is no indication in the record whether this loan was repaid. In June 1993 the Deiberts gave the Shafers $ 9,357.39, with the understanding that Jeanette Shafer's share of her parents' estate would be reduced by the corresponding amount.[1] Shafer declared bankruptcy in 1996, and he did not list the Deiberts as creditors or the farm as an asset in the bankruptcy proceeding.

Walter Deibert died on June 5, 1990, and Beulah Deibert died on November 13, 1998. In a 1979 will, Mrs. Deibert included a provision allowing her to make advancements to her children. In March 1991, Mrs. Deibert executed a "Memorandum of Advancement," in accordance with the 1979 will, with the following provision:

---

4. This understanding was reduced to writing and signed by Jeanette Shafer.

"Since my daughter Jeannette and her husband have been living rent-free on my farm, the rent she otherwise would have paid is to be deemed an advancement.... The amount to be deducted ... is $125 times the number of months she lives on the farm from March 1, 1979 [5] until the date of my death."

On October 3, 1997, Mrs. Deibert executed a new will, in which she bequeathed the residue of her estate to her daughters "in equal shares." This will contained a paragraph with respect to the share of Jeanette Shafer, which provided for the following adjustments in calculating her share of the estate:

"In June 1993 I gave to my daughter Jeannette Shafer the sum of Nine Thousand Three–Hundred Fifty–Seven and Thirty–Nine Hundredths ($9,357.39) Dollars. Further, my daughter Jeannette Shafer and her husband have been living rent-free at my farm since March 1, 1969. I direct that the aforesaid cash gift be treated as an advancement to my daughter. I also direct that a sum calculated at the rate of One–Hundred Twenty–Five ($125.00) Dollars per month commencing March 1, 1969 for each month that my daughter Jeannette Shafer and/or her husband reside at my farm until my death be treated as an advancement to my daughter, Jeannette Shafer."

Mrs. Deibert designated two of her daughters, Catherine Delauter and Doris James, as her personal representatives in this will.

At the time of her death, Mrs. Deibert was residing in an assisted living facility. Prior to her death, Catherine Delauter and Doris James, in their capacity as Mrs. Deibert's attorneys in fact, had tried to get Shafer to vacate the farm so that they would be able "to ground rent the farm to [obtain] some more money to pay for [Mrs. Deibert's living] expenses." They had sent Shafer a notice to quit dated August 20, 1998, asking that

---

5. During the trial, Mrs. Nicholson, the attorney who drafted the will, testified that, upon reviewing the initial draft, Doris James, acting on her mother's behalf, called Mrs. Nicholson's office to change the date to March 1, 1969.

he vacate the premises by March 1, 1999. On August 25, 1998, Delauter and James, in their capacity as attorneys in fact for Mrs. Deibert, entered into a contract of sale for the farm in the amount of $587,000. When Mrs. Deibert died in November, Shafer claimed that he was on an "agricultural tenancy" and that the notice was too short for him to get his crops out. The Estate's attorney sent a revised notice to quit, extending the date to April 1, 1999. Shafer continued to occupy the farm after April 1, 1999.

The Estate then instituted in the District Court of Maryland an ejectment action against Shafer pursuant to § 8–402 of the Real Property Article, so as to make it possible for the Estate to sell the property and complete the distribution under Mrs. Deibert's will. The action was subsequently transferred to the Circuit Court for Washington County when Shafer requested a jury trial. Shafer filed a counterclaim on May 17, 1999, seeking a declaratory judgment that the Estate's interest in the property had been terminated by the operation of § 8–107 of the Real Property Article because no rent had been demanded or paid for over twenty years. The Estate filed a motion to dismiss the counterclaim, arguing that it was filed more than six months after the date of Mrs. Deibert's death and was, therefore, untimely under § 8–103 of the Estates and Trusts Article. The Circuit Court denied the Estate's motion to dismiss. Following a trial on the merits, the court submitted the question of the existence of a lease to the jury. The jury returned a special verdict in favor of Shafer, finding that a lease existed and that no rent had been paid or demanded for more than twenty years. The court then entered a declaratory judgment determining that Shafer had title to the property.

The Estate filed a notice of appeal and, prior to any proceedings in the Court of Special Appeals, filed in this Court a petition for a writ of certiorari. The petitioners argued, *inter alia*, that the arrangement between the Deiberts and Shafer created a "permissive use" between family members and not a lease, that even if a lease existed, § 8–107 of the Real Property Article was intended to apply only to ground

rents, and that Shafer's "claim" was not timely filed under § 8–103 of the Estates and Trusts Article. This Court granted the certiorari petition, *DeLauter v. Shafer*, 361 Md. 231, 760 A.2d 1106 (2000), and we shall reverse the judgment of the Circuit Court. As previously indicated, we hold that there was no lease between the Dieberts and Shafer. Accordingly, we need not and do not reach the other issues raised.

## II.

It has long been the law in Maryland that, where the relevant facts are undisputed, "the question whether the relation of landlord and tenant existed between the parties . . . [is] a question of law to be determined by the Court upon the consideration of the facts," *Howard v. Carpenter*, 22 Md. 10, 23 (1864). In the *Howard* case, this Court reversed a judgment based on a jury's determination that a lease existed; our predecessors held that, on the undisputed facts, the alleged lessee's "possession was permissive" and that no lease existed. *Id.* at 25. And in *Baltimore v. Baltimore Steam Packet Co.*, 164 Md. 284, 164 A. 878 (1933), this Court reversed a trial court determination that a particular arrangement created a mere license, and held that a lease had been established. *See,* in addition, *Hayes v. Covington*, 183 Md. 506, 510, 39 A.2d 475, 477 (1944); *Tizer v. Tizer*, 162 Md. 489, 494–496, 160 A. 163, 165 (1932); *Emrich v. Union Stock–Yard Co.*, 86 Md. 482, 485, 38 A. 943, 944 (1897); *Allen v. Lambden,* 2 Md. 279, 282–283 (1852); *Nicholson Air v. Allegany County*, 120 Md.App. 47, 63, 706 A.2d 124, 132 (1998). *See also, e.g., Progressive Friendship Sav. & Loan Ass'n v. Rose*, 235 Md. 169, 174, 201 A.2d 8, 11 (1964) ("Since a lease is a form of contract its creation . . . [is] subject to the general rules governing the creation . . . of contracts in general"); *Kikas v. Baltimore County,* 200 Md. 360, 364–366, 89 A.2d 625, 626–628 (1952); *Cook v. Boehl,* 188 Md. 581, 590–591, 53 A.2d 555, 560 (1947).

"Whether the contract is a lease or a license depends upon the intention of the parties," *Norman v. Century Athletic Club*, 193 Md. 584, 594, 69 A.2d 466, 470 (1949). As with

other contracts, however, the intention of the parties is determined by an "objective interpretation" of the writings and surrounding circumstances. *Calomiris v. Woods,* 353 Md. 425, 435–436, 727 A.2d 358, 363 (1999). We examine "what a reasonable person in the position of the parties would have thought [the arrangement] meant." *Calomiris,* 353 Md. at 436, 727 A.2d at 363, quoting *General Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985). "Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution." *Pacific Indemnity v. Interstate Fire & Casualty Co.,* 302 Md. 383, 388, 488 A.2d 486, 488 (1985), and cases there cited.

Professor Tiffany summarized the distinction between a license and lease as follows (1 Tiffany, *The Law of Real Property* § 79, at 117–118 (3d ed.1939), footnotes omitted):

" **§ 79. License and lease distinguished.**

A tenancy involves an interest in the land passed to the tenant and a possession exclusive even of the landlord except as the lease permits his entry, and saving always the landlord's right to enter to demand rent or to make repairs. A mere permission to use land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given, is but a license. That one who is tenant under a lease has the possession of the land serves to distinguish him from a licensee, that is, a person to whom is given merely permission to use the land for a specified purpose. Such a person has not the possession of the land, this remaining in the licensor, and he has not, it seems, any interest in the land which he can assert as against a third person, that is, he has no rights in rem.

"The question whether an instrument is a lease, creating an estate in favor of another and the consequent relation of tenancy, or is merely a license, is one properly of the construction of the language used, as showing an intention

to give possession vel non. That this is so has been quite often recognized."

In an earlier treatise, Tiffany pointed out that,

"if the language used purports to give another the right to use the land only for a specific purpose, and there is nothing to show an intention to give the right of possession, a tenancy cannot be regarded as arising." 1 Tiffany, *Landlord and Tenant* § 7, at 25 (1910)."

*See also Miller v. State*, 174 Md. 362, 368, 198 A. 710, 714 (1938) ("During the term of the tenancy, unless permitted by the terms of the lease, a landlord has no more right to enter premises possessed by the tenant than a stranger would have"); *Kessler v. Equity Management, Inc.*, 82 Md.App. 577, 586, 572 A.2d 1144, 1149 (1990) ("It is an elementary principle of real property law that a tenant has a right of possession of demised premises to the exclusion of the landlord").

■ Other important factors indicating that the use of premises was under a license and not a lease are whether any facts "show[ ] that [the alleged tenant] was recognized as tenant by the" owner and whether "rent was paid," *Howard v. Carpenter, supra*, 22 Md. at 25. *See University Plaza v. Garcia*, 279 Md. 61, 66, 367 A.2d 957, 960 (1977) ("[I]n this State rent is . . . payment for the tenant's use, possession and enjoyment of the land"); *Worthington v. Cooke*, 56 Md. 51 (1881).

■ Turning to the case at bar, it is clear that no lease existed between the Deiberts and Charles Shafer. Shafer never had exclusive possession of the farm, and his own testimony was that the Deiberts were at the farm every day during "working time." The testimony concerning the $125 per month payments, which were never regularly made, was that they were to help pay taxes and insurance. They were not designated as "rent." Moreover, the only writings concerning rent, namely Mrs. Deibert's 1991 memorandum and her 1997 will, stated that the Shafers were living at the farm rent free. There was never a demand for rent. No writings characterized this family relationship as one of landlord-ten-

ant. Shafer did not list the Deiberts as creditors in his bankruptcy proceedings.

Section 8–107 of the Real Property Article, upon which Shafer's case is based, applies when there is "specific rent reserved out of particular property" under a lease, and there is no demand or payment of the "specific rent" for 20 consecutive years. It would be anomalous to apply this statute in a case where no rent at all was provided for, and where parents simply furnished a place to live for their child and her spouse. In sum, the undisputed facts show that Charles Shafer simply had a license to live on the Dieberts' farm.

*JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT.*