**Bernard MOORE, Plaintiff**

v.

**WILLIAMS COLLEGE, Defendant.**

**C.A. No. 09–cv–30208–MAP.**

United States District Court, D. Massachusetts.

April 7, 2010.

Daryl J. Lapp, Robert George Young, II, Edwards Angell Palmer & Dodge, LLP, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER RE-GARDING DEFENDANT'S MO-TION TO DISMISS (Dkt. No. 22)

PONSOR, District Judge.

## I. INTRODUCTION.

*Pro se* Plaintiff Bernard Moore sued his former employer, Defendant Williams College, alleging breach of employment contract; wrongful termination; wrongful denial of continuation coverage in violation of the Comprehensive Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. 1161(a); violation of Mass. Gen. Laws ch. 186, § 14; and denial of unemployment benefits. Defendant moved to dismiss the complaint in its entirety. (Dkt. No. 22.) For the reasons set forth below, the court will allow Defendant's motion.

## II. FACTUAL BACKGROUND.

On July 1, 2008, Plaintiff was appointed as a Visiting Lecturer in Defendant's Political Science Department for a one-year term. To obtain the position, he provided Defendant with various credentials, including a graduate but not an undergraduate transcript. Defendant later learned that Plaintiff had gained admission to graduate school by submitting forged undergraduate credentials and had never earned a bachelor's degree.

At the time of his appointment, Plaintiff was asked whether he had been convicted of a crime in the past five years. He answered in the negative and did not disclose a conviction for felony bank fraud that occurred more than five years previously.[1] Defendant appears to have been satisfied with Plaintiff's performance as a lecturer, because on July 1, 2009, Plaintiff was reappointed, this time as Assistant Professor, for a three-year term. Throughout his period of employment with Defendant, Plaintiff resided at an apartment in Defendant's faculty housing.

During the 2009–2010 school year, on November 9, 2009, Plaintiff pled guilty in the United States District Court for the District of Columbia to student aid fraud, bank fraud, and Social Security fraud. (Dkt. No. 23, Ex. C, Plea Agreement 1–2.) Documents submitted in connection with the plea proceeding confirmed that Defendant defrauded multiple institutions, including educational institutions, over a period of approximately twenty-five years. (See Dkt. No. 23, Ex. D, Statement of the Offense.) There is some dispute as to whether Plaintiff committed any crimes while actively employed by Defendant. For purposes of this Motion to Dismiss, the court will accept Plaintiff's assertion that he did not.

---

1. There is some dispute about the date of the prior conviction. Plaintiff places it in 1987 (Dkt. No. 26, Ex. 1, Aff. of Bernard Moore 14); Defendant cites to a 1997 case, *U.S. v. Moore*, 127 F.3d 1107, 1997 WL 665655 (9th Cir.1997) (unpublished disposition).

On November 10, 2009, Defendant, having learned of Plaintiff's guilty plea, suspended Plaintiff without pay and denied him further access to the college, including his apartment in faculty housing. On November 12, 2009, William G. Wagner, Defendant's Interim President, sent a letter to Plaintiff explaining that he was being terminated for cause because of his guilty plea, his failure to notify the college of the crimes and subsequent plea, fraudulent credentials he had supplied to Williams College in seeking employment, and his misuse of a Williams College credit card.

On November 16, 2009, Wagner e-mailed all students at Williams College to inform them that Plaintiff was no longer employed at the college. He added that there was "no evidence of serious misuse on his part of College resources." (Dkt. No. 9, Ex. E.) On the same day, Defendant cancelled Plaintiff's health insurance. Plaintiff e-mailed Wagner to express his intention of exhausting his administrative remedies with respect to his COBRA rights and any other rights he might have.

On November 17, 2009, Plaintiff requested COBRA continuation coverage. The next day, Martha R. Tetrault, Defendant's Director of Human Resources, informed Plaintiff that he was ineligible for COBRA coverage because he had been terminated for "gross misconduct." (Dkt. No. 9, Ex. G, Letter dated November 18, 2009, from Martha R. Tetrault to Professor Bernard Moore.)

Plaintiff filed this action on November 27, 2009. He amended the original complaint twice, and by February 2010, the parties had filed seven preliminary motions and requests, including Defendant's Motion to Dismiss (Dkt. No. 22). After consultation with the parties, the clerk set all five motions and the two requests for oral argument on February 17, 2010. The court ruled from the bench on all then-outstanding motions except the Motion to Dismiss, with dispositions as follows:

- Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order (Dkt. No. 7) was denied;
- Plaintiff's Motion for Waiver of Posting a Security Bond in Obtaining a Temporary Restraining Order and a Preliminary Injunction (Dkt. No. 11) was denied;
- Plaintiff's requests that the court strike the pleadings (Dkt. Nos. 28 and 29) were denied;
- Plaintiff's Motion to Seal Exhibits C and E in Support of Plaintiff's Reply to the Opposition to the Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 27) was allowed; and
- Defendant's Motion to Stay Discovery (Dkt. No. 24) was allowed.

With respect to Defendant's Motion to Dismiss (Dkt. No. 22), the court did not rule but did indicate that it would allow the motion as to Count I (breach of employment contract and wrongful termination), Count III (denial of housing), and Count IV (denial of unemployment benefits).[2] The court took the motion under advisement to consider the disposition of Count II, the claim that Defendant wrongfully interfered with Plaintiff's election rights under COBRA.

### III. DISCUSSION.

#### A. Count I: Breach of Contract and Wrongful Termination.

█ Plaintiff alleges that his termination of employment prior to the expira-

---

**2.** Plaintiff conceded that Count IV lacked merit because his claim for benefits was still pending.

tion of his three-year term was unlawful because (1) the conduct at issue occurred before he was employed at Williams, (2) he submitted no fraudulent credentials to Williams, and (3) he had no obligation to notify his employer of his guilty plea. (Dkt. No. 18, Second Am. Compl. 6.) A contract of employment may be terminated before its expiration if the termination is for cause. Valid causes may include

> dissatisfaction with [an] employee, entertained in good faith, for reasons such as lack of capacity or diligence, failure to conform to usual standards of conduct, or other culpable or inappropriate behavior, or ... grounds for discharge reasonably related, in the employer's honest judgment, to the needs of his business. Discharge for a 'just cause' is to be contrasted with discharge on unreasonable grounds or arbitrarily, capriciously, or in bad faith.

*Klein v. President and Fellows of Harvard Coll.*, 25 Mass.App.Ct. 204, 517 N.E.2d 167, 169–70 (1987) (quoting *G & M Employment Serv., Inc. v. Commonwealth*, 358 Mass. 430, 265 N.E.2d 476, 480 (1970)).

■ In this case, the discharge was not arbitrary or capricious. Defendant learned, among other things, that Plaintiff had fabricated undergraduate credentials in order to gain admission to graduate school. As a college in the business of credentialing undergraduates, Defendant has a strong interest in ensuring that members of its faculty have come by their own credentials legitimately. Moreover, the termination by a college of an admitted felon, particularly one who has committed student aid fraud, can hardly be described as lacking just cause. The discharge for was thus honestly related "to the needs of [the] business," *Klein*, 517 N.E.2d at 170. Accordingly, Count I will be dismissed.

## B. *Count III: Tenants' Rights.*

■ Plaintiff argues that his exclusion from faculty housing violated Mass. Gen. Laws ch. 186, § 14, which protects tenants from certain actions by their landlords. However, the statute applies only to tenants, not to licensees or other individuals who may enjoy the use of real property, and Plaintiff was never Defendant's tenant. There is no landlord-tenant relationship where housing is provided in an employment context and the lease term does not extend beyond the period of employment. *Allandale Farm Inc. v. Koch*, No. 97350, 1999 WL 33579241, at *1 (Mass.Super. Aug. 9, 1999). Plaintiff's housing agreement explicitly provided that he had to vacate the premises "no later than June 30" of the academic year in which his appointment ended. (*See* Dkt. No. 23, Ex. A, Housing Agreement ¶ 6.) His housing was provided as a condition of employment and only for so long as he remained employed by Defendant. He was therefore not a tenant and is not entitled to the protections of the statute. Accordingly, Count III will be dismissed.

## C. *Count IV: Denial of Unemployment Benefits.*

On the papers, Plaintiff argued that Defendant denied him unemployment benefits or somehow prevented his obtaining unemployment benefits. However, at the February 17, 2010 hearing, Plaintiff informed the court that his benefits had not, in fact, been denied and that his application was still pending. He agreed that Count IV lacked merit, and the court will therefore dismiss Count IV.

## D. *Count II: Denial of Right to Elect Continuation Coverage under COBRA*

Defendant argues that Plaintiff's COBRA claim fails as a matter of law because

Plaintiff was fired for gross misconduct. In general, a terminated employee with employer-provided health insurance is entitled to COBRA coverage. 29 U.S.C. § 1161(a). However, an employee fired for "gross misconduct" is not so entitled. 29 U.S.C. § 1163(2).

Defendant's November 12, 2009 letter terminating Plaintiff's employment provided four reasons for termination:

1. Committing and/or pleading guilty to a crime;

2. Providing fraudulent credentials so as to obtain employment

3. Failing to notify employer of crime and/or guilty plea

4. Using college credit card for charges "not permitted by College policy."

(Dkt. No. 9, Ex. B.) In its Motion to Dismiss, Defendant relies on the first two reasons—criminal conduct and the use of false records to obtain employment. The court must determine whether either of these acts constituted "gross misconduct" for COBRA purposes.

There are no regulations defining "gross misconduct" for purposes of the statute, and "federal case law addressing the subject is sparse." *Zickafoose v. UB Services, Inc.*, 23 F.Supp.2d 652, 655 (S.D.W.Va. 1998). In general, courts have found that mere "negligence or incompetence" does not rise to the level of gross misconduct. *Mlsna v. Unitel Communications, Inc.*, 91 F.3d 876, 881 (7th Cir.1996). *See also Nakisa v. Continental Airlines*, No. H–00–090, 2001 WL 1250267, at *2 (S.D.Tex. May 10, 2001); *Cabral v. Olsten Corp.*, 843 F.Supp. 701, 704 (M.D.Fla.1994). Courts have declined to find gross misconduct where the behavior at issue was inadvertent or sporadic—for example, where a forgetful employee occasionally neglected an employer's instructions. *Nero v. Univ. Hospitals Mgmt. Services Org.*, No.

1:04vc1833, 2006 WL 2933957, at *5 (N.D.Ohio Oct. 12, 2006) (distinguishing *Bryant v. Food Lion Inc.*, 100 F.Supp.2d 346 (D.S.C.2000), *aff'd*, 8 Fed.Appx. 194 (4th Cir.2001)). Likewise, courts have not found gross misconduct where an accountant submitted an "unfavorable" financial statement to Dun & Bradstreet (a business credit reporting agency), *Mlsna*, 91 F.3d at 881, or where an employee repeated the substance of a private conversation to a co-worker's wife, *Paris v. Korbel & Bros., Inc.*, 751 F.Supp. 834, 836, 838–39 (N.D.Cal.1990).

Courts have found gross misconduct where a drunken employee crashed an employer-provided car, *Collins v. Aggreko, Inc.*, 884 F.Supp. 450, 452, 454 (D.Utah 1995); where an employee called a co-worker a racial slur and threw an apple at her, *Nakisa*, 2001 WL 1250267, at *3; where an employee battered a co-worker, placing her in the hospital, *Zickafoose*, 23 F.Supp.2d at 654 and 657; where an employee stole from her employer, *Burke v. Am. Stores Employee Benefit Plan*, 818 F.Supp. 1131, 1133, 1138 (N.D.Ill.1993); and where an employee repeatedly and persistently refused to follow the instructions of his supervisor, *Bryant*, 100 F.Supp.2d at 365.

■ In short, the conduct at issue must generally be "outrageous, extreme or unconscionable" to constitute gross misconduct. *Zickafoose*, 23 F.Supp.2d at 655. Some courts have also determined that the conduct must evince an "evil design" against the employer or, absent malice, "an intentional and substantial disregard of the employer's interests." *Korbel*, 751 F.Supp. at 839. *See also Bryant*, 100 F.Supp.2d at 376 (quoting *Korbel*, 751 F.Supp. at 839); *Collins*, 884 F.Supp. at 453 (same); *Burke*, 818 F.Supp. at 1135 (same).

The conduct in this case is sufficiently outrageous to constitute gross misconduct, and while it did not arise from an "evil design" to harm Defendant, it indicated a reckless disregard for Defendant's interests. First, there was the student aid fraud. Plaintiff systematically defrauded student lending institutions, the very institutions that colleges rely on for their ongoing support and, to some extent, for their survival. The conduct was criminal, was deliberate, and was repeated. His concealment of this behavior, and his exposure as a student loan scam artist, was obviously detrimental to the interests of the college.

Second, and perhaps more importantly, there was the issue of Plaintiff's falsely obtained credentials. Defendant was surely aware that a bachelor's degree was a prerequisite to most, if not all, graduate programs. He must have known that Defendant, having viewed his graduate transcript, would have assumed quite reasonably that Plaintiff had obtained a bachelor's degree. Plaintiff was hired to teach undergraduates. Defendant's assumption that he had at some point in time been an undergraduate was directly relevant to the initial hiring decision. By putting forward his graduate credentials while failing to disclose that he had no bachelor's degree, and had indeed fabricated that credential, Plaintiff knowingly misrepresented himself and his qualifications for the job.

Finally, and perhaps most importantly, Plaintiff's history rendered him unfit to teach undergraduates. Instead of earning a bachelor's degree, he simply lied about having obtained one. Such an individual cannot credibly instruct undergraduate students who are hard at work trying to obtain the credential he fabricated.

Plaintiff's conduct was not negligent or sporadic; it was not the result of mere carelessness or inattention to detail. It was deliberate and systematic, and it rendered him uniquely unfit for the job from which he was terminated. Such conduct was properly characterized as gross misconduct for purposes of COBRA.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Dkt. No. 22) is hereby ALLOWED. This case may now be closed.

It is So Ordered.