*Bruce Uthus v. Valley Mill Camp, Inc.*, No. 2366, Sept. Term 2018. Opinion filed on December 18, 2019, by Berger, J.

LANDLORD-TENANT - LEASE VERSUS LICENSE - OCCUPANCY INCIDENTAL TO EMPLOYMENT

Generally, a person who occupies premises belonging to an employer is not a tenant when the occupancy is incidental to, or necessary for, performance of the employment. The lack of rent payment required of an employee is a strong indication that no lease was intended.

TRESPASS - JURISDICTION

An employee of a summer camp who resided in an apartment on the summer camp's property and who paid no rent for the apartment was a licensee, not a tenant, of the employer. When the employer filed a trespass claim against the employee after he failed to vacate the property following the termination of his employment, the circuit court had jurisdiction to address the trespass claim. The claim was not a landlord-tenant action required to be brought in the District Court.

TRESPASS - POSSESSION - SUMMARY JUDGMENT

The circuit court appropriately granted summary judgment to the employer when the terminated employee presented no evidence beyond conclusory statements that he was in actual legal possession of the apartment located on the employer's property.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2366

September Term, 2018

_____

BRUCE UTHUS

v.

VALLEY MILL CAMP, INC.

_____

Berger,
Nazarian,
Reed,

JJ.

_____

Opinion by Berger, J.

_____

Filed:  December 18, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from an order of the Circuit Court for Montgomery County granting a Motion for Partial Summary Judgment filed by Valley Mill Camp, Inc. ("Valley Mill"), appellee. The Complaint that initiated the lawsuit giving rise to this appeal alleged, *inter alia*, that Bruce Uthus ("Uthus"), appellant, had trespassed on Valley Mill's property. After discovery, Valley Mill moved for partial summary judgment. Following a hearing, the circuit court entered summary judgment in Valley Mill's favor on the trespass claim and ordered Uthus to vacate the property. Uthus filed a Motion to Alter or Amend Judgment, asserting that the circuit court lacked jurisdiction to address the trespass claim. The circuit court denied Uthus's motion, and Uthus appealed.

On appeal, Uthus presents two issues for our review, which we have rephrased as follows:

> I. Whether the circuit court erred when it determined that it had jurisdiction to consider the trespass claim.
>
> II. Whether the circuit court erred by granting Valley Mill's motion for summary judgment on the trespass claim.

Perceiving no error, we shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Valley Mill operates a summer camp for children on approximately sixty acres in Germantown, Maryland. The camp has been operated by Uthus's family since 1956. The sole shareholder of Valley Mill is Evelyn McEwan, Uthus's mother. Ms. McEwan is also Valley Mill's President. Valley Mill leases the property (the "Property") upon which the

camp operates from Seneca Joint Venture, a Maryland general partnership composed of Ms. McEwan, the Robert McEwan Trust, Valley Mill, Uthus, and Seneca Venture, LLC.

Uthus is a former employee and former member of the Board of Directors of Valley Mill. In May of 2017, Valley Mill terminated Uthus's employment.[1] Prior to Uthus's termination, Uthus had resided in an apartment unit on the Property. Uthus had resided in the apartment for approximately nineteen years while employed by Valley Mill. After the termination of Uthus's employment, Valley Mill asked Uthus to vacate the apartment, but he refused to do so.

On July 17, 2017, Valley Mill filed a complaint against Uthus in the Circuit Court for Montgomery County alleging that Uthus was trespassing on the Property.[2] Following discovery, Valley Mill moved for summary judgment on the trespass count. At the conclusion of a hearing on the motion on July 25, 2018, the circuit court issued its oral ruling as follows:

> So at this point there doesn't appear to be any factual dispute about certain facts, and that is that Valley Mill Camp has a lease on this property, and that at some point Mr. Uthus was employed there at the camp, to help run the camp, and that employment ended in May of 2017. And he was asked to vacate the premises, and apparently he has not.

---

[1] The reasons for Uthus's termination are absent from the record, and, regardless, are irrelevant to the determination of the issues on appeal.

[2] The complaint sought preliminary and injunctive relief enjoining Uthus from communicating with the camp's employees, campers, and camper's families. The complaint included claims of tortious interference with economic relationships, defamation, and detinue along with the trespass claim. In addition to granting Valley Mill summary judgment on the trespass claim, the circuit court granted Uthus summary judgment on the tortious interference with economic relationships claim. The remaining counts were subsequently voluntarily dismissed by Valley Mill.

So under the claim that's been brought for trespass, Valley Mill has the exclusive right to possess the property, and they've given notice to Mr. Uthus to vacate the property, which he hasn't, which clearly shows that his presence on the property is without the consent of [Valley Mill]. So I'll grant the motion for summary judgment as to the claim of trespass, which is Count 4.

Uthus filed a Motion to Alter or Amend the circuit court's order on August 10, 2018.[3] In his motion, Uthus alleged that: (1) the circuit court did not have subject matter jurisdiction over the trespass claim, and (2) the circuit court erred by granting summary judgment on the trespass claim because Uthus physically possessed the apartment. The circuit court denied Uthus's motion. This timely appeal followed.

Additional facts shall be set forth as necessitated by our discussion of the issues on appeal.

**STANDARD OF REVIEW**

The entry of summary judgment is governed by Maryland Rule 2-501, which provides:

> The court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

Md. Rule 2-501(f).

The Court of Appeals has described the standard of review to be applied by appellate courts reviewing summary judgment determinations as follows:

---

[3] Uthus appeared at the July 25, 2018 hearing *pro se*. His August 10, 2018 motion was filed through counsel.

3

On review of an order granting summary judgment, our analysis "begins with the determination [of] whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law." *D'Aoust v. Diamond*, 424 Md. 549, 574, 36 A.3d 941, 955 (2012) (quoting *Appiah v. Hall*, 416 Md. 533, 546, 7 A.3d 536, 544 (2010)); *O'Connor v. Balt. Cnty.*, 382 Md. 102, 110, 854 A.2d 1191, 1196 (2004). If no genuine dispute of material fact exists, this Court determines "whether the Circuit Court correctly entered summary judgment as a matter of law." *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condo.*, 404 Md. 560, 571, 948 A.2d 11, 18 (2008) (citations omitted). Thus, "[t]he standard of review of a trial court's grant of a motion for summary judgment on the law is *de novo*, that is, whether the trial court's legal conclusions were legally correct." *D'Aoust*, 424 Md. at 574, 36 A.3d at 955.

*Koste v. Town of Oxford*, 431 Md. 14, 24-25 (2013). Because this case presents only issues of law, we apply the *de novo* standard of review.

## DISCUSSION

## I.

Uthus's first appellate argument focuses on the circuit court's alleged lack of jurisdiction to consider Valley Mill's trespass claim. Uthus asserts that the trespass claim brought by Valley Mill is actually "either a wrongful/forcible detainer action or a landlord/tenant action, and therefore pursuant to [Md. Code 1974, 2013 Repl. Vol.),] § 4-401(4) [of the Courts and Judicial Proceedings Article ("CJP")] is committed by the legislature to the exclusive original jurisdiction of the District Court in which the property at question is located." As we shall explain, we are not persuaded that the circuit court lacked jurisdiction to consider Valley Mill's trespass claim.

4

CJP § 4-401 provides, in relevant part: "Except as provided in § 4-402 of this subtitle, and subject to the venue provisions of Title 6 of this article, the District Court has exclusive original civil jurisdiction in . . . [a]n action involving landlord and tenant, distraint, or wrongful detainer, regardless of the amount involved . . . ." CJP § 4-402 provides that "the District Court does not have jurisdiction to decide the ownership of real property or of an interest in real property."

Uthus characterizes the dispute at the center of this appeal as a landlord/tenant or wrongful detainer action, but Uthus has presented no evidence of a landlord/tenant relationship between himself and Valley Mill. Indeed, as we shall explain, the record reflects that Uthus was a licensee of Valley Mill during his employment, not a tenant.

"Where the relevant facts are undisputed, 'the question [of] whether the relation of landlord and tenant existed between the parties . . . [is] a question of law to be determined by the Court upon the consideration of the facts.'" *Delauter v. Shafer*, 374 Md. 317, 324, (2003) (quoting *Howard v. Carpenter*, 22 Md. 10, 23 (1864)). Landlords and tenants have a special class of relationship that is governed by statutes as well as common law. *See generally* 49 Am. Jur. 2d Landlord and Tenant § 1 (2019) (discussing the nature of the landlord and tenant relationship). Indeed, the United States Supreme Court has observed that "[t]here are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants." *Lindsey v. Normet*, 405 U.S. 56, 72 (1972). Under Maryland law, a "landlord" is defined as "any landlord, including a 'lessor[,']" and a "lease" is defined as "any oral or written agreement, express or implied, creating a landlord and tenant relationship, including any 'sublease' and any

5

further sublease." Md. Code (1974, 2015 Repl. Vol.), § 1-101(g)-(h) of the Real Property

Article ("RP").

To our knowledge, Maryland appellate courts have not expressly addressed whether

an employee who occupies premises belonging to an employer is a tenant of the employer.

Other courts have generally held the following:

> A person who occupies the premises of the person's employer
> as part compensation for such employment generally is
> considered to be in possession as an employee, rather than as a
> tenant, where the occupancy is connected with and incidental
> to, or is required for the necessary or better performance of, the
> employee's services.

49 Am. Jur. 2d *Landlord and Tenant* § 8 (2019). *See*, *e.g.*, *Moore v. Williams College*, 702

F. Supp. 2d 19 (D. Mass. 2010), *aff'd*, 414 Fed. Appx. 307 (1st Cir. 2011) (applying

Massachusetts law) (determining that a college professor, who was provided with faculty

housing by the college, was not a "tenant" of the college and was not entitled to the

protections of state statute protecting tenants from certain actions of their landlords when

the professor's housing was provided as a condition of employment and only for so long

as he remained employed by the college); *GENC Realty LLC v. Nezaj*, 52 A.D.3d 415, 415,

860 N.Y.S.2d 106, 107 (2008) (determining that a superintendent, who was previously a

rent-controlled tenant, had exchanged his status of tenant for that of employee, and

landlord-tenant relationship ceased to exist after he accepted the superintendent position);

*Bennardo v. Searchwell*, 54 Misc. 3d 924, 928, 43 N.Y.S.3d 878, 881 (N.Y. Dist. Ct. 2016)

(determining that home healthcare aide, who occupied the premises of the owner prior to

6

the owner's death, was a licensee whose occupancy rights terminated upon the end of her employment).

Critically, the lack of rent payment required of an employee is a "strong consideration to show that no lease was intended." 49 Am. Jur. 2d *Landlord and Tenant* § 7 (2019) (citing *Mead v. Owen*, 80 Vt. 273 (1907)). *See also Howard v. Carpenter*, 22 Md. 10, 25 (1864) (explaining that whether a purported tenant is "recognized as a tenant by the" owner and whether "rent was paid" are relevant to the determination of whether a lease existed).

A 2004 advisory opinion by the Office of the Attorney General is instructive on this issue. "We have explained that, '[w]hile not binding . . . the opinions of the Attorney General are, nevertheless, generally entitled to careful consideration.'" *Dyer v. Bd. of Educ. of Howard Cty.*, 216 Md. App. 530, 536 (2014) (quoting *Scott v. Clerk of Circuit Ct. for Frederick Cnty.*, 112 Md. App. 234, 240, (1996)). The Office of the Attorney General considered whether a live-in domestic employee had tenancy rights, and, specifically, the right to invite and receive guests. 89 Op. Att'y Gen. 3 (2004).[4] The Attorney General observed that courts have "looked to a number of factors" when determining whether an occupant is a tenant:

> For example, a person who rents a room, provides furnishings, maintains the room, and excludes others, including the property owner, is likely to be found to be a tenant. *Mathews v. Livingston*, 85 A. 529 (Conn. 1912). On the other hand, a

---

[4] The advisory opinion further considered whether a live-in employee's rights would be affected if the residence is owned by a foreign diplomat or by a foreign government that employees a household employee to work for a diplomat. This portion of the advisory opinion is irrelevant to the issues before us in this appeal.

7

person who occupies a room to which the owner has free access will ordinarily be found to be a lodger and not a tenant. *Tamanian v. Gabbard*, 55 A.2d. 513 (D.C. 1947), *Johnson v. Kolibas*, 182 A. 2d 157 (N.J. App. 1962), or for other reasons, *Taylor v. Dean*, 78 A.2d 382 (D.C. App. 1951). Among the other factors that courts have considered are whether the occupants share kitchen and bath facilities, and whether furnishings, linens, or maid services are provided. *State Farm Fire & Casualty Co. v. Quirt*, 28 Md. App. 603, 611, 346 A.2d 497 (1975); *Johnson v. Kolibas*, 182 A.2d 157 (N.J. Super. 1962).

89 Op. Att'y Gen. at 5. The opinion further considered the specific context of an employee who occupies premises belonging to an employer:

Courts have often held that an employee who occupies premises belonging to an employer is not a tenant when the occupancy is incidental to, or necessary for, performance of the employment. *See* 49 Am. Jur. 2d *Landlord and Tenant* § 9. This rule has been applied to situations involving domestic employees. *See Dobson Factors, Inc. v. Dattory*, 364 N.Y.S. 2d 723, 724 (1975) (occupancy incidental to employment as building superintendent does not establish landlord-tenant relationship); *Mackenzie v. Minis*, 63 S.E. 900 (Ga. 1909) (house provided to gardener near employer's home as part of compensation did not create tenancy). In such situations, the live-in domestic employee does not have the right of a tenant to invite others into the employer's home without the employer's assent. *See Tipsword v. Potter*, 174 P. 133 (Ida. 1918); *Tucker v. Bert*, 115 N.W. 722 (Mich. 1908). Thus, a household worker who resides in the employer's home does not necessarily have the rights of a tenant.

89 Op. Att'y Gen. at 6 (footnote omitted). The advisory opinion ultimately concluded that whether a live-in domestic employee has tenancy rights "depend[s] on the particular arrangement between the employer and employee." *Id.* at 8-9.

The determination of whether a contract "is a lease or a license depends on the intention of the parties." *Delauter*, *supra*, 374 Md. at 324. "As with other contracts,

8

however, the intention of the parties is determined by an 'objective interpretation' of the writings and surrounding circumstances. *Id.* at 324-25 (quoting *Calomiris v. Woods*, 353 Md. 425, 435-436 (1999)). In *Delauter*, the Court of Appeals addressed a situation in which a family member had lived on family land for decades with no lease or expectation of rent. Unlike the present case, *Delauter* did not involve an employment situation, but it presents otherwise very similar facts and is relevant to the determination of whether Uthus was a tenant or licensee. The Court cited 1 Tiffany, *The Law of Real Property* § 79, at 117–118 (3d ed.1939) for the principle that "[a] mere permission to use land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given, is but a license." *Delauter*, *supra*, 374 Md. at 325. The *Delauter* Court emphasized that no rent was paid, "[t]here was never a demand for rent," and "[n]o writings characterized this family relationship as one of landlord-tenant." *Id.* at 326.

Uthus acknowledged that he paid no rent for the apartment at any time and that he initially began residing in the apartment when he began working full-time for Valley Mill. The apartment was located on camp premises. When asked by the circuit court whether he had a lease for the apartment, Uthus replied, "[n]o, we do not." Uthus explained to the court that it was his understanding that he could "live on the property, not pay rent, no utilities, and [he] also had, part of that agreement was for managing of the business." Uthus told the court that he had been "working at the camp and had grown and built the camp up."

In this case, Uthus had both employment and familial relationships with Valley Mill and, like *Delauter*, no writing or other document characterized the relationship between

9

Uthus and Valley Mill as one of landlord-tenant. As in *Delauter*, Uthus never paid rent to

Valley Mill, nor was rent demanded. In our view, the situation in the present case is

indistinguishable from that in *Delauter*. Having considered the undisputed facts and the

relevant legal authorities, we agree with the circuit court that Uthus was not a tenant but

was a licensee.[5]

---

[5] Uthus analogizes this case with the California case of *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1041-42 (Cal. App. 2009), a case in which the California court found that an employee was a tenant of an apartment leased by the employee's employer from a third party. The primary issue in the case was whether there was a genuine issue of material fact as to whether the apartment resident was a third-party beneficiary of the lease agreement between the landlord and the resident's former employer. This is a vastly different scenario from the present case, in which there was no lease agreement to which any person could be considered a third-party beneficiary. Furthermore, although we acknowledge that the California court discussed whether the former employee/resident was a mere licensee and reached a conclusion contrary to the conclusion we reach in this case, we see no reason to depart from the reasoning of *Delauter*, *supra*, 374 Md. 317, as well as the Attorney General's advisory opinion discussed *supra*.

In his reply brief, Uthus further asserts that he was a "tenant by sufferance." He cites the case of *Howard v. Carpenter*, 22 Md. 10 (1864), in support of this argument. In *Howard*, the Court of Appeals considered whether any lease existed and concluded that no notice or demand of possession was "necessary to enable the owner to maintain ejectment" because "[n]o lease was executed, nor any definite contract for a lease entered into between the parties." *Id.* at 25. The Court characterized the situation as a "tenancy at sufferance." *Id.* Uthus does not explain what rights he alleges he would have as a tenant at sufferance or how such a characterization would affect our conclusion in this case. Indeed, in the *Howard* case, despite characterizing the situation as a "tenancy at sufferance," the Court concluded that the alleged lessee's "possession was permissive" and that no lease existed. *Id.* Uthus does not offer any substantial argument supporting his position that the characterization of his situation as a tenancy at sufferance would in any way change our analysis, and we will not attempt to make these arguments for him. *See Beck v. Mangels*, 100 Md. App. 144, 149 (1994) ("Neither in his brief, nor at oral argument, did [the appellant] offer any substantial argument supporting his position on these specific questions. Md. Rule 8-504(a)(5) requires a party to present 'argument in support of the party's position.' . . . Accordingly, we shall not directly address the questions discussed above.").

Having determined that Uthus was not a tenant of Valley Mill, we reject Uthus's assertion that the circuit court lacked jurisdiction to consider Valley Mill's claim on the basis that the district court has exclusive jurisdiction for actions involving landlord and tenant. To the extent that Uthus asserts that Valley Mill was required to bring a wrongful detainer action in the district court regardless of the existence (or lack thereof) of a landlord-tenant relationship, we are further unpersuaded, as we shall explain.

"Wrongful detainer" is defined by statute as "to hold possession of a property without the right of possession." RP § 14-132(a). "A person may not hold possession of property unless the person is entitled to possession of the property under the law." RP § 14-132(c). As we discussed *supra*, Uthus cites CJP § 4-410(4) in support of his assertion that Valley Mill's action was, in fact, a wrongful detainer action that must have been brought in the district court rather than the circuit court.

Notably, the wrongful detainer statute is permissive, not mandatory, in that it provides that "a person claiming possession *may* make complaint in writing to the District Court of the county in which the property is located." RP § 14-132(d)(1) (emphasis supplied). Nowhere in the wrongful detainer statute does the legislature suggest that a wrongful detainer action is the only action by which an aggrieved plaintiff may seek to oust a squatter from its property.[6] Critically, the dispute between Valley Mill and Uthus in

---

[6] One may find a contrasting example in RP § 8-401(b)(1), which provides that when a landlord seeks to re-possess a premises for non-payment of rent, "the landlord or the landlord's duly qualified agent or attorney *shall* file the landlord's written complaint under oath or affirmation, in the District Court of the county wherein the property is situated." (Emphasis supplied.)

11

this case implicated issues of ownership and Uthus's right to use the Property -- issues over which the circuit court had exclusive jurisdiction. *See* CJP § 4-402(b) ("Except as provided in § 4-401 of this subtitle, the District Court does not have jurisdiction to decide the ownership of real property or of an interest in real property."); CJP § 1-501 ("The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal.").

Uthus cites the case of *Empire v. Hardy*, 386 Md. 628 (2005), in support of his assertion that Valley Mill's action was improperly brought in the circuit court. In our view, Uthus's reliance on *Empire* is misplaced. In *Empire*, the Court of Appeals considered whether Maryland Rule 14-102 provided the sole judicial remedy for a purchaser at a foreclosure sale who is unable to oust a person in possession of the purchased property. 386 Md. at 632. The *Empire* Court concluded that a wrongful detainer action was not the proper action in such a situation, commenting that the wrongful detainer statute "primarily concerns landlord-tenant actions." *Id.* at 639. Indeed, *Empire* supports the conclusion that a wrongful detainer action is not the only method by which Valley Mill could seek to oust Uthus under the circumstances of this case.[7] Accordingly, we reject Uthus's assertion that the circuit court lacked jurisdiction to consider Valley Mill's trespass claim.

---

[7] In *Empire*, the Court was expressly presented with the issue of whether a wrongful detainer action was applicable in the context of a purchaser seeking to oust a squatter who

12

Uthus further asserts that the circuit court erred by granting summary judgment to Valley Mill on the trespass claim. Specifically, Uthus asserts that he was in actual possession of the apartment and that this precludes Valley Mill from establishing the elements of trespass.

First, we note that although Uthus is a partner of Seneca Joint Venture, the entity that owns the Property, the Property was leased to Valley Mill. Indeed, Uthus signed the lease as a representative of Valley Mill, the tenant, because he was, at the time, a member of Valley Mill's Board of Directors. Uthus also signed the lease as a partner of Seneca Joint Venture, the lessor/owner of the Property. By signing the lease with Valley Mill, Seneca Joint Venture relinquished its possessory interest in the Property. *See Curtis v. U.S. Bank Nat. Ass'n*, 427 Md. 526, 536 (2012) ("Under elementary principles of real property law, a tenant properly on the premises of a property has a right of possession as against a landlord. It follows that a landlord . . . would have no right of 'immediate possession' as against a tenant legally in possession of the property . . . .") (quotation and citations omitted); *Rausch v. Allstate Ins. Co.*, 388 Md. 690, 707 (2005) (explaining that a tenant "has a possessory interest" in a property) (quotation and citation omitted). The mere fact

---

remained after the property was purchased at foreclosure and concluded that the remedy was unavailable in that context. We need not and shall not address the issue of whether a wrongful detainer action may have been an alternate avenue of relief available to Valley Mill in this case. Rather, we hold that even if a wrongful detainer action was available, it was not Valley Mill's exclusive remedy, and Valley Mill was not precluded from bringing a trespass claim in the circuit court.

that Uthus is a member of the entity that possesses title to the Property is, therefore, irrelevant to our consideration of the trespass claim.

We next turn our attention to whether the undisputed evidence established the elements of trespass. The tort of trespass is defined as "an intentional or negligent intrusion upon or to the possessory interest in property of another." *Royal Inv. Grp., LLC v. Wang*, 183 Md. App. 406, 444 (2008) (quotation and citation omitted). "In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without his consent." *Id.* It is beyond dispute that Valley Mill had a possessory interest in the Property through the lease with Seneca Joint Venture and that the apartment is located on the Property leased by Valley Mill. Further, it is undisputed that Uthus remained present in the apartment on the Property after Valley Mill asked Uthus to leave, and that Uthus continued to occupy the apartment on the Property without Valley Mill's consent.

Nonetheless, Uthus asserts that he remained in actual possession of the apartment when Valley Mill filed its trespass claim. In support of this assertion, Uthus relies on the case of *Baltimore Gas & Elec. Co. v. Lane*, 338 Md. 34, 46-47, *overruled on other grounds by Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680 (1998). As we shall explain, Uthus's reliance on *Lane* is misplaced. *Lane* involved a child who sustained injuries after playing with a large empty wooden cable spool which had been left by Baltimore Gas & Electric Company ("BGE") in an area known by BGE to be frequented by children. 338 Md. at 40. Lane was injured when he, along with other children, were playing on BGE's spool and

14

the spool, which weighed approximately one-half ton, rolled over his head and body. *Id.* The trial court had granted summary judgment in favor of BGE after BGE argued, *inter alia*, that the child was a trespasser to the spool and consequently BGE owned him no duty other than to avoid willfully or wantonly injuring him. *Id.* at 41. The Court of Appeals affirmed this Court's reversal of the summary judgment ruling, explaining that, "[v]iewing the facts in the light most favorable to Lane, the finder of fact could conclude that BGE had lost possession of the spool when some other neighborhood children -- not including Lane -- took possession of it for recreational purposes (i.e., to ride it down a nearby hill)." *Id.* at 47.

Uthus's brief contains conclusory statements that Uthus was in possession of the apartment at the time the Complaint giving rise to this appeal was filed, but Uthus has pointed to no evidence that supports such a conclusion. Unlike the situation in *Lane*, there is no dispute in this case that Valley Mill, at all relevant times, lawfully possessed the Property and continued to operate its camp programs on the Property. There is also no dispute that Valley Mill sought to exclude Uthus from the Property after the termination of his employment. Further, there is no evidence to suggest that Valley Mill at any time relinquished its possessory interest in the Property, including the apartment. For these reasons, we agree with the circuit court that there are no genuine disputes of material fact and that Valley Mill is entitled to judgment as a matter of law as to the trespass claim. Accordingly, we affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**