*Bruce Uthus v. Valley Mill Camp Inc.*, No. 7, Sept. Term, 2020.  Opinion by Hotten, J.

**REAL PROPERTY — LANDLORD-TENANT — LICENSEES**.  Determining whether a person residing on property based on an agreement is a tenant or a licensee requires a reasonable and objective analysis of the surrounding facts and circumstances.  The lack of exclusive possession and not paying rent indicates that the person is a licensee and not a tenant.

**COURTS AND JUDICIAL PROCEEDINGS — JURISDICTION — DISTRICT COURT — WRONGFUL DETAINER.**  Wrongful detainer is a permissive action.  Parties who wish to remove a person in unlawful possession of property may either file a wrongful detainer action in the District Court, *or* they may pursue other legal remedies, such as a trespass action in the circuit court.

Circuit Court for Montgomery County
Case No. 434503-V
Argued: November 5, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 7

September Term, 2020

_____

BRUCE UTHUS

v.

VALLEY MILL CAMP, INC.

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: March 4, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal stems from a family dispute regarding a family business and the resulting familial fallout. Respondent, Valley Mill Camp, Inc. ("Valley Mill"), terminated the employment of Petitioner, Bruce Uthus ("Uthus"), and asked him to vacate the campground residence where he had been living for approximately twenty years. When Uthus refused to leave, Valley Mill filed a trespass action against Uthus in the Circuit Court for Montgomery County. In response to a motion for partial summary judgment advanced by Valley Mill, the court entered judgment in its favor. Thereafter, Uthus appealed to the Court of Special Appeals, which affirmed. Uthus timely appealed to this Court, and we granted *certiorari* to resolve the following question: "Can a person claiming the right to possession against a person in actual peaceable possession of real property bring an action in circuit court for common law trespass to recover possession of the property?"[1]

We answer the question in the affirmative and for the reasons expressed below, shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Valley Mill operates a children's seasonal camp on a roughly sixty-acre parcel of land near Germantown, Maryland. The land on which the camp is operated is currently owned by Seneca Joint Venture, a Maryland general partnership that includes Bruce Uthus,

---

[1] Uthus' question, which we rephrased for the sake of clarity, presented in full asks: "Can a person claiming the right to possession against a person in actual peaceable possession of real property bring an action in circuit court for common law trespass to recover possession of the property, when the Maryland legislature has committed such actions for possession to the exclusive original jurisdiction of the District Court?"

Evelyn McEwan, Valley Mill, the Robert McEwan Trust, and Seneca Venture, LLC. Valley Mill leases the property from Seneca Joint Venture.

Valley Mill had been family owned and operated since Robert McEwan started the camp in 1956. Evelyn McEwan, who took over after her father Robert's retirement, is currently Valley Mill's president and sole shareholder. Uthus is Evelyn's son.

Uthus began working at the camp in 1995, at the request of his mother and grandfather. In 1997, Uthus assumed various positions at the camp year-round, eventually serving as camp director and member of Valley Mill's board of directors. For the next two decades, Valley Mill provided Uthus with a car, an apartment unit on the campgrounds rent free, and health insurance, as part of his employment.

In May 2017, after some escalating familial disagreements, Valley Mill removed Uthus from its board of directors and terminated his employment. Additionally, Evelyn requested that Uthus vacate the campgrounds, but he refused.

Thereafter, Valley Mill sued Uthus for trespass[2] in the Circuit Court for Montgomery County on July 17, 2017. In response, Uthus argued that he was entitled to indefinitely reside on the property, based on a past oral promise from his grandfather and his partnership status at Seneca Joint Venture.

---

[2] Valley Mill's complaint also included claims for tortious interference with economic relationships, defamation, and detinue along with the trespass claim, and sought injunctive relief and damages, as well as eviction. The circuit court granted Uthus' motion for partial summary judgment on the tortious interference with economic relationships claim and the remaining counts were subsequently dismissed by Valley Mill.

After discovery, Valley Mill moved for partial summary judgment. Following a hearing on July 25, 2018, the circuit court found that:

> [A]t this point there doesn't appear to be any factual dispute about certain facts, and that is that Valley Mill Camp has a lease on this property, and that at some point Mr. Uthus was employed there at the camp, to help run the camp, and that employment ended in May of 2017. And he was asked to vacate the premises, and apparently he has not.
>
> [U]nder the claim that's been brought for trespass, Valley Mill has the exclusive right to possess that property, and that they've given notice to Mr. Uthus to vacate the property, which he hasn't, which clearly shows that his presence on the property is without the consent of [Valley Mill]. [Accordingly,] I'll grant the motion for summary judgment as to the claim of trespass, which is Count 4.

The circuit court also awarded nominal damages to Valley Mill and ordered Uthus to vacate the property.

On August 10, 2018, Uthus filed a Motion to Alter or Amend the order of the circuit court, alleging that the court both erred in granting summary judgment and lacked subject matter jurisdiction over the trespass claim. The circuit court denied the motion.

Uthus timely appealed to the Court of Special Appeals, arguing that the circuit court's grant of summary judgment on the trespass claim was erroneous for lack of subject matter jurisdiction, and alternatively, that no trespass occurred because Uthus was in physical possession.

The Court of Special Appeals affirmed. First, the Court of Special Appeals held that the circuit court properly exercised jurisdiction over the trespass claim because Uthus was a licensee of Valley Mill, not a tenant. According to the Court of Special Appeals, the failure of Uthus to pay rent reflected that Uthus was merely a licensee of Valley Mill.

3

Second, the Court of Special Appeals held that there was a valid trespass claim because the elements of trespass—intentional interference with the possessory interest of another—had been established. Uthus timely appealed to this Court, and we granted *certiorari*.

When reviewing a grant of summary judgment, we first determine whether there is a genuine dispute of material fact. *Koste v. Town of Oxford*, 431 Md. 14, 24–25, 63 A.3d 582, 589 (2013). If no genuine dispute of material fact exists, we review questions of law under the non-deferential *de novo* standard of review, that is, whether the circuit court's conclusions of law were legally correct. *Koste*, 431 Md. at 24–25, 63 A.3d 582, 589 ("On review of an order granting summary judgment, our analysis begins with the determination of whether a genuine dispute of material fact exists; only in the absence of such a dispute will we review questions of law.") (citations and internal quotation marks omitted). The parties do not dispute the material facts here. Therefore, under a *de novo* standard, we review the circuit court's legal conclusions to determine whether they are legally correct.

The jurisdictional question raised here highlights some of the different options that an owner claiming the right to possession of a property can take against a person in actual possession. In that regard, we must define the parameters that distinguish a tenant from a licensee.

Valley Mill is claiming possession from Uthus, who has remained in actual possession of the apartment on the campgrounds following Valley Mill's termination of his employment and request to vacate the premises. The legal mechanism advanced by

4

Valley Mill to regain possession was a common law trespass action in the circuit court. Uthus argues that Valley Mill was limited to pursue an action to repossess the apartment in the District Court, and that the circuit court lacked jurisdiction. We disagree.

The jurisdiction of the circuit courts and District Court is statutorily conferred under Maryland Code, Courts and Judicial Proceedings Article ("Cts. & Jud. Proc."). Section 1-501 states: "The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county . . . except where by law jurisdiction has been limited or conferred exclusively upon another tribunal."

There are specific instances where jurisdiction lies exclusively with the District Court. Cts. & Jud. Proc. § 4-401(4) states: "[T]he District Court has exclusive original civil jurisdiction in . . . [a]n action involving landlord and tenant, distraint, or wrongful detainer, regardless of the amount involved[.]" While the District Court has exclusive jurisdiction in landlord and tenant, distraint, and wrongful detainer actions, "the District Court does not have jurisdiction to decide the ownership of real property or of an interest in real property." Cts. & Jud. Proc. § 4-402(b). Thus, if a real property dispute involves "the ownership of real property or of an interest in real property," Cts. & Jud. Proc. § 4-402(b), the District Court does not have jurisdiction. However, if a case presents a "landlord and tenant, distraint, or wrongful detainer" issue, then the District Court has exclusive jurisdiction over that case, "regardless of the amount involved[.]" Cts. & Jud. Proc. § 4-401(4).

5

In the instant case, Uthus argues that the District Court should have exclusive jurisdiction over this action as either a landlord-tenant matter or wrongful detainer action.[3]

**Landlord-Tenant**

The existence of a landlord-tenant relationship is a prerequisite for the District Court to have exclusive jurisdiction in this case pursuant to Cts. & Jud. Proc. § 4-401(4): "[T]he District Court has exclusive original civil jurisdiction in . . . an action involving landlord and tenant[.]" "It has long been the law in Maryland that, where the relevant facts are undisputed, 'the question whether the relation of landlord and tenant existed between the parties . . . [is] a question of law to be determined by the Court upon the consideration of the facts.'" *Delauter v. Shafer*, 374 Md. 317, 324, 822 A.2d 423, 427 (2003) (quoting *Howard v. Carpenter*, 22 Md. 10, 23 (1864)); *see also McDaniel v. Baranowski*, 419 Md. 560, 574, 19 A.3d 927, 935 (2011) ("The legal relationship between landlord and tenant is governed by the contract between the parties as well as any statutory authority.") (internal citations omitted).

---

[3] The third possibility for the District Court to have exclusive jurisdiction under Cts. & Jud. Proc. § 4-401(4), distraint, is not at issue here. As this Court has explained, "[t]he landlord remedy of distraint simply refers to an action for distress for rent[.]" *Hudson v. Hous. Auth. of Baltimore City*, 402 Md. 18, 29 n.7, 935 A.2d 395, 401 n.7 (2007); *see also State v. Goldberg*, 437 Md. 191, 231 n.3, 85 A.3d 231, 255 n.3 (2014) (Watts, J., dissenting) ("Black's Law Dictionary defines 'distrain' as follows: 'To force (a person, usu. a tenant), by the seizure and detention of personal property, to perform an obligation (such as paying overdue rent).' Black's Law Dictionary 508 (8th ed. 2004)."). Because Valley Mill is seeking possession of the campgrounds and is not seeking rent from Uthus, distraint would not be an appropriate action for Valley Mill to file and Uthus does not argue that the District Court should have exclusive jurisdiction in this case as a distraint action.

The agreement between a landlord and a tenant typically takes the form of a lease, which the Maryland Code, Real Property Article ("Real Prop.") § 1-101(h), defines as "any oral or written agreement, express or implied, creating a landlord and tenant relationship, including any 'sublease' and any further sublease." Although the record reflects that Uthus and Valley Mill may have had an oral agreement regarding Uthus residing on the campgrounds as part of his employment, the agreement was never reduced to writing.

To ascertain whether the oral agreement created a landlord-tenant relationship between Valley Mill and Uthus, we consider "what a reasonable person in the position of the parties would have thought the arrangement meant" under an "objective interpretation of the writings and surrounding circumstances." *Delauter*, 374 Md. at 324–25, 822 A.2d at 427 (quoting *Calomiris v. Woods*, 353 Md. 425, 435–36, 727 A.2d 358, 363 (1999)) (internal quotation marks and citation omitted). To do so, we examine the defining characteristics of a tenancy: possession, owner recognition, and rental payments. *See, e.g., Curtis v. U.S. Bank Nat. Ass'n*, 427 Md. 526, 536, 50 A.3d 558, 564 (2012) ("Under elementary principles of real property law, a tenant properly on the premises of a property has a right of possession as against a landlord."); *Delauter*, 374 Md. at 326, 822 A.2d at 428 ("Other important factors indicating that the use of premises was under a license and not a lease are whether any facts show that the alleged tenant was recognized as tenant by the owner and whether rent was paid[.]") (internal quotation marks and citations omitted); *University Plaza v. Garcia*, 279 Md. 61, 66, 367 A.2d 957, 960 (1977) ("[I]n this State rent is . . . payment for the tenant's use, possession and enjoyment of the land."); *Miller v. State*, 174 Md. 362, 368, 198 A. 710, 714 (1938) ("During the term of the tenancy, unless

7

permitted by the terms of the lease, a landlord has no more right to enter premises possessed by the tenant than a stranger would have.").

A landlord-tenant relationship likely exists when a person resides on the property of a landowner by virtue of an agreement that includes payments of rent and exclusive possession. The resident has the possessory right to exclude the landowner from entering the property without permission of the resident. *See*, *e.g.*, *Curtis*, 427 Md. at 536, 50 A.3d at 564. The landowner, by virtue of the agreement, recognizes the resident's right to reside on the property, and the resident pays the landowner rent for residing on the property. *See*, *e.g.*, *Delauter*, 374 Md. at 326, 822 A.2d at 428. Thus, when the indicia of a landlord-tenant relationship—exclusive possession, owner recognition, and rental payments—are present, a landlord-tenant relationship may be formed, regardless of whether the parties reduced their agreement to writing.

By contrast, a person residing on a property by virtue of an agreement with the landowner which does not contain the indicia of a landlord-tenant relationship, may be considered a licensee of the landowner and not a tenant. Unlike a tenancy, the licensee is only on the property with "a license[, which] is merely a privilege to do some particular act or series of acts on land without possessing any estate or interest therein." *Supervisor of Assessments of Anne Arundel Cty. v. Hartge Yacht Yard, Inc.*, 379 Md. 452, 468, 842 A.2d 732, 741 (2004) (quoting *Condry v. Laurie*, 184 Md. 317, 320, 41 A.2d 66, 68 (1945)). As this Court has long recognized, "a mere license may be revoked at the pleasure of the licensor[.]" *Baltimore & O. R. Co. v. Potomac Coal Co.*, 51 Md. 327, 330 (1879) ("[A license] is a power or authority given to a [person] to do some lawful act, and is a personal

liberty to the party to whom given . . . [t]he general doctrine is, that a mere license may be revoked at the pleasure of the licensor[.]"). *See also Hartge Yacht Yard, Inc.*, 379 Md. at 468–69, 842 A.2d at 741–42 (citing *Hess v. Muir*, 65 Md. 586, 600, 5 A. 540, 543–44 (1886) ("Holding that the privilege of locating oyster lots on State-owned river bottom has no elements of a grant by patent, but is simply a license, revocable at the pleasure of the Legislature.") (alterations omitted); *Mayor & City Council of Baltimore v. Brack*, 175 Md. 615, 622, 3 A.2d 471, 475 (1939) ("[A] license for the use of land is revocable, both at law and in equity, whether the license is or is not executed by the expenditure of money by the licensee; and that the latter, upon the revocation of the license, can claim compensation for expenditures made by him upon the premises on the faith of the license, as against the original licensor only."); *Rau v. Collins*, 167 Md. App. 176, 192, 891 A.2d 1175, 1184 (2006) ("A license is also revocable at the pleasure of the party making it[.]").

The issue of whether a person residing and working on land was considered a tenant or a licensee, in the absence of a written agreement and the payment of rent, was before this Court in *Delauter v. Shafer*, 374 Md. 317, 822 A.2d 423 (2003). In *Delauter*, a family member inhabited and helped operate a family-owned farm for decades under a familial agreement but did not pay rent or reduce any part of the agreement to writing. 374 Md. at 320–21, 822 A.2d 423, 425. This Court explained the distinction between an agreement that creates a tenancy and an agreement that creates a license as follows:

> "A tenancy involves an interest in the land passed to the tenant and a possession exclusive even of the landlord except as the lease permits his entry, and saving always the landlord's right to enter to demand rent or to make repairs. A mere permission to use land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given, is but

9

a license.  That one who is tenant under a lease has the possession of the land serves to distinguish him from a licensee, that is, a person to whom is given merely permission to use the land for a specified purpose.  Such a person has not the possession of the land, this remaining in the licensor, and he has not, it seems, any interest in the land which he can assert as against a third person, that is, he has no rights in rem.

The question whether an instrument is a lease, creating an estate in favor of another and the consequent relation of tenancy, or is merely a license, is one properly of the construction of the language used, as showing an intention to give possession vel non.  That this is so has been quite often recognized." [1 Tiffany, *The Law of Real Property* § 79, at 117–18 (3d ed.1939) (footnotes omitted)].

"[I]f the language used purports to give another the right to use the land only for a specific purpose, and there is nothing to show an intention to give the right of possession, a tenancy cannot be regarded as arising."    1 Tiffany, *Landlord and Tenant* § 7, at 25 (1910).  *See also Miller v. State,* 174 Md. 362, 368, 198 A. 710, 714 (1938) ("During the term of the tenancy, unless permitted by the terms of the lease, a landlord has no more right to enter premises possessed by the tenant than a stranger would have"); *Kessler v. Equity Management, Inc.,* 82 Md. App. 577, 586, 572 A.2d 1144, 1149 (1990) ("It is an elementary principle of real property law that a tenant has a right of possession of demised premises to the exclusion of the landlord").

Other important factors indicating that the use of premises was under a license and not a lease are whether any facts "show[ ] that [the alleged tenant] was recognized as tenant by the" owner and whether "rent was paid," *Howard v. Carpenter,* 22 Md. at 25.  *See University Plaza v. Garcia,* 279 Md. 61, 66, 367 A.2d 957, 960 (1977) ("[I]n this State rent is ... payment for the tenant's use, possession and enjoyment of the land"); *Worthington v. Cooke,* 56 Md. 51 (1881).

374 Md. at 325–26, 822 A.2d at 427–28.

This Court concluded that the nonexistence of exclusive possession and the absence of any rental payments demonstrated that the agreement was a license and not a lease.  374 Md. at 326, 822 A.2d at 428 ("[I]t is clear that no lease existed between the [parties].  [The

resident] never had exclusive possession of the farm[.] There was never a demand for rent. No writings characterized this family relationship as one of landlord-tenant.").

*Delauter* is an example of the appropriate case-by-case analysis employed to determine whether an employment agreement creates a lease or a license. This Court considered whether the resident paid the landowners rent for residing on the property and whether the resident maintained exclusive possession with regards to the landowners. Because neither exclusive possession nor payment of rent were present, this Court held that a landlord-tenant relationship had not been formed. *Delauter*, 374 Md. at 327, 822 A.2d at 428. We employ the same analysis here, considering the helpful hallmarks of a tenancy—exclusive possession, owner recognition, and rental payments—to determine whether the agreement between Uthus and Valley Mill created a tenancy.

For many years, Uthus worked for Valley Mill in various capacities and resided in an apartment on the campgrounds. The parties did not reduce their agreement regarding the occupancy of the apartment to writing. In the absence of a written agreement, we make a reasonable and objective interpretation of the circumstances to determine whether the elements of a landlord-tenant relationship—possession, owner recognition, and rental payments—are met.

Uthus claims actual possession of the apartment based on residing there for many years. However, we fail to see how that residency alone is dispositive of the question before us. Uthus was removed from the board of directors of Valley Mill and remained an employee until the president of Valley Mill, Evelyn McEwan, requested that he vacate the apartment. By refusing to vacate the apartment on the campgrounds against the wishes of

11

the owner, in the absence of some other right to reside there, Uthus cannot claim possession of the apartment in a way that would equate to a tenancy.

Uthus made no rental payments, nor did Valley Mill demand any rental payments from him. Rental payments are a strong indicium of a landlord-tenant relationship, and since rent was not part of the agreement between Uthus and Valley Mill, Uthus was not a tenant of Valley Mill, but an employee who was allowed to reside in the apartment on the campgrounds during the tenure of his employment. Once the employment was terminated and Uthus was asked to vacate the premises, he no longer had the right to occupy the apartment.

In sum, considering that Uthus remained in the apartment without an exclusive right to possess the apartment, and failed to make any rental payments, we conclude that Uthus was a licensee of Valley Mill and not a tenant. Therefore, inasmuch as Uthus was a licensee of Valley Mill and not a tenant, the District Court would not have exclusive jurisdiction over this action under Cts. & Jud. Proc. § 4-401(4) ("[T]he District Court has exclusive original civil jurisdiction in . . . an action involving landlord and tenant[.]").

### Wrongful Detainer

"[T]he District Court has exclusive original civil jurisdiction in . . . an action involving . . . wrongful detainer[.]" Cts. & Jud. Proc. § 4-401(4). Real Prop. § 14-132(c) states that: "A person may not hold possession of property unless the person is entitled to possession of the property under the law." To hold possession of real property without having the right of possession is a "wrongful detainer," Real Prop. § 14-132(a), and the "person claiming possession may make complaint in writing to the District Court of the

12

county in which the property is located." Real Prop. § 14-132(d). Uthus argues that the wrongful detainer statute is mandatory. We disagree.

"In matters involving statutory construction, the canons applied by this Court are well-settled and have been oft repeated. The predominant goal of statutory construction is to ascertain and effectuate the intention of the legislature." *75-80 Properties, L.L.C. v. Rale, Inc.*, 470 Md. 598, 623, 236 A.3d 545, 559 (2020) (citations omitted). "[W]e begin by examining the plain meaning of the statutory language. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *In re R.S.*, 470 Md. 380, 402–03, 235 A.3d 914, 927 (2020) (internal quotation marks and citations omitted).

Under the wrongful detainer statute, the "person claiming possession *may* make complaint in writing to the District Court of the county in which the property is located." Real Prop. § 14-132(d) (emphasis added). This Court has long interpreted the term "may" in a statute to be permissive. *See*, *e.g.*, *WSC/2005 LLC v. Trio Ventures Assocs.*, 460 Md. 244, 271, 190 A.3d 255, 270 (2018) (holding that "an award of attorney's fees to a prevailing party pursuant to [Cts. & Jud. Proc.] § 3-228(b) is merely discretionary and not required" because the statute provides "that a court *may* award costs and disbursements.") (emphasis added); *Porter v. State*, 455 Md. 220, 261, 166 A.3d 1044, 1068 (2017) (Greene, J., dissenting) ("the [relevant statute's] mandatory language was replaced with discretionary language in the current version, which provides that 'the court *may* admit' such evidence.") (emphasis in original); *Brodsky v. Brodsky*, 319 Md. 92, 98, 570 A.2d

13

1235, 1237 (1990) ("The word 'may' is generally understood as permissive, as opposed to mandatory, language."); *Rowland v. Harrison*, 320 Md. 223, 232–33, 577 A.2d 51, 55–56 (1990) (holding that Maryland's counterclaim rule, which states that parties "may interpose a claim as a counterclaim[,]" by "its plain terms, is permissive and not mandatory."); *Maryland-National Capital Park & Planning Comm'n v. Silkor Dev, Corp.*, 246 Md. 516, 522–24, 229 A.2d 135, 139–40 (1967) (absent clear legislative indication to the contrary, "may" is presumed to apply in a permissive sense).

By contrast, this Court has also long held that the term "shall" in a statute indicates the legislative intent that the statute be mandatory. *See*, *e.g.*, *75-80 Properties, L.L.C.*, 470 Md. at 631–32, 236 A.3d 545, 564 ("The term 'shall' connotes that an action is mandatory, not subject to discretion or satisfaction of further conditions."); *Perez v. State*, 420 Md. 57, 63, 21 A.3d 1048, 1052 (2011) ("As this Court and the intermediate appellate court have reiterated on numerous occasions, the word 'shall' indicates the intent that a provision is mandatory.") (citing *State v. Green*, 367 Md. 61, 82, 785 A.2d 1275, 1287 (2001)); *Thanos v. State*, 332 Md. 511, 522, 632 A.2d 768, 773 (1993) ("When a legislative body commands that something be done, using words such as 'shall' or 'must,' rather than 'may' or 'should,' we must assume, absent some evidence to the contrary, that it was serious and that it meant for the thing to be done in the manner it directed."); *In re James S.*, 286 Md. 702, 706, 410 A.2d 586, 588 (1980) ("Unless the context otherwise indicates[,] the use of the word 'shall' (except in its future tense) indicates a mandatory intent.") (citations omitted); *Harvey v. State*, 51 Md. App. 113, 118–19, 441 A.2d 1094, 1097 (1982) ("Whenever the word 'shall' is used it is mandatory. Why else would this word be used? If the legislative body

responsible for the enactment of the statute or rule meant 'directory,' we assume they would say so.").

Following this Court's long history of interpreting the statutory term "may" as discretionary, as opposed to the mandatory term "shall," we conclude that the wrongful detainer statute is permissive and not mandatory. The statute uses the permissive term "may" to describe a wrongful detainer action—a "person claiming possession *may* make complaint in writing to the District Court of the county in which the property is located[,]" Real Prop. § 14-132(d) (emphasis added)—as opposed to the mandatory term "shall." Accordingly, the use of the permissive term "may" in the wrongful detainer statute indicates that a wrongful detainer action is an option to pursue when attempting to remove someone not legally on a property, but not the exclusive remedy.

Our analysis that the wrongful detainer statute is permissive is further bolstered by comparing the wrongful detainer statute to another statute in the Real Property Article. The Real Property Article discusses when a landlord can repossess a property for a tenant's failure to pay rent in § 8-401. That process is delineated in § 8-401(b)(1): "Whenever any landlord shall desire to repossess any premises to which the landlord is entitled . . . the landlord or the landlord's duly qualified agent or attorney *shall* file . . . in the District Court of the county wherein the property is situated[.]" (Emphasis added). When a landlord seeks to regain possession of a property from a tenant for the tenant's failure to pay rent, the landlord is required to file an action in the District Court. The landlord does not have the choice to seek repossession in either the circuit court or the District Court; Real Prop.

15

§ 8-401(b)(1) requires the landlord to file in the District Court: the landlord *shall* file in the

District Court.[4]

The permissive language of the wrongful detainer statute suggests that a wrongful

detainer action in District Court is an option to pursue when attempting to remove someone

not legally on a property, but not the exclusive remedy. We are not persuaded that Valley

Mill was required to bring this action in the District Court as a wrongful detainer action.

Rather, Valley Mill had the choice to pursue a wrongful detainer action against Uthus in

the District Court or another legally available option.

In the instant case, Valley Mill pursued a trespass action in circuit court. The record

reflects that at one point, Valley Mill had pursued a wrongful detainer action against Uthus

---

[4] We are unpersuaded by Uthus' argument that interpreting the word *may* as permissive would call into question other statutes with the same term. Specifically, Uthus points to Real Prop. § 8-402.1 and § 8-402. Section 8-402.1(a)(1)(i) states: "Where an unexpired lease for a stated term provides that the landlord may repossess the premises prior to the expiration of the stated term if the tenant breaches the lease, the *landlord may make complaint in writing to the District Court* of the county where the premises is located if [.]" Section 8-402(b)(1)(i) states: "Where . . . the landlord shall desire to repossess the property after the expiration of the term for which it was leased . . . the landlord *may make complaint in writing to the District Court* of the county where the property is located." Uthus argues that these statutes represent the only way for a landlord to seek repossession for a holdover tenant, and despite the fact that this is the only method for repossession from a holdover tenant, the statute uses the term *may*. This argument is unconvincing. As explained above, the term *may* is generally permissive. Moreover, these statutes deal with landlord-tenant issues, which are exclusively under the jurisdiction of the District Court under Cts. & Jud. Proc. § 4-401(4): "the District Court has exclusive original civil jurisdiction in . . . an action involving landlord and tenant. . . ." Holdover tenant evictions must be brought in District Court, and the term *may* can simply mean that the landlord has the choice to pursue this action or not to pursue any action. However, these statutes do not indicate that the term *may* in the wrongful detainer statute should be interpreted to be mandatory.

in the District Court but later dismissed it during ongoing negotiations.[5]  Besides being a viable alternative in this case, a circuit court trespass action also presented strategic advantages to both parties.  Valley Mill brought several additional claims against Uthus, and Uthus engaged in extensive discovery which would not have been otherwise available in District Court.  *See* Md. Rule 3-711 ("[N]o pretrial discovery . . .  shall be permitted in . . . an action for . . . wrongful detainer[.]").

In support of Uthus' argument that Valley Mill was required to file a wrongful detainer action in the District Court, Uthus directs us to this Court's decision in *Empire Properties, LLC v. Hardy*, 386 Md. 628, 873 A.2d 1187 (2005).  However, as we explain below, a close reading of *Empire* demonstrates that it comports with the long line of cases of this Court that have interpreted the statutory term *may* to mean optional.

The question in *Empire* was whether a purchaser of property at a foreclosure sale (Empire) pursued the correct legal proceedings to acquire possession of the property. Maryland Rule 14-102(a) provided one clear method for Empire to obtain actual possession of the property in circuit court: "Whenever the purchaser of an interest in real property at a sale conducted pursuant to these Rules is entitled to possession, and the person in actual possession fails or refuses to deliver possession, the purchaser may file a motion requesting the court to enter a judgment awarding possession of the property."  386 Md. at 634–35, 873 A.2d at 1191 (citing Md. Rule 14-102(a)).  In the interests of time and money, Empire

---

[5] We decline to conjecture whether Valley Mill's potential wrongful detainer action would be successful, but we do emphasize that wrongful detainer was a possibility.

attempted to acquire possession in the District Court through the wrongful detainer statute at the time.  386 Md. at 635 n.2, 873 A.2d at 1191 n.2.  In support of its position, Empire highlighted Md. Rule 14-102(a)'s usage of the word *may*—"the purchaser or a successor in interest who claims the right of immediate possession *may* file a motion for judgment awarding possession of the property"—to argue that Md. Rule 14-102 was not the exclusive method and that wrongful detainer in the District Court was a viable alternative.

This Court rejected that argument, explaining that the wrongful detainer statute "*primarily has effect in the context of a landlord-tenant relationship under the law.*"  386 Md. at 639–40, 873 A.2d at 1194 (emphasis in original).  Indeed, "the very existence of [Md.] Rule 14-102, which speaks *directly* to the proper procedure an aggrieved purchaser at a foreclosure sale can take in the *[c]ircuit [c]ourt* when 'the person in actual possession fails or refuses to deliver possession,'" makes this "even more obvious."  386 Md. at 639–40, 873 A.2d at 1194 (citing Md. Rule 14-102(a)).

This Court explained further by quoting from this Court's decision in *Laney v. State*, 379 Md. 522, 842 A.2d 773 (2004): "Although this judicial process may be used to oust a mortgagor who no longer is entitled to possession, the use of the term 'may' in [Md.] Rule 14-102(a) . . . reflects the fact that the ouster process is not mandatory to obtain possession of the purchased property."  386 Md. at 640, 873 A.2d at 1194 (quoting *Laney v. State*, 379 Md. 522, 541–43, 842 A.2d 773, 784–85 (2004)).  This interpretation of the word *may*, which referred to the availability (at the time) of alternative remedies outside of the judicial process, did not help Empire's case:

It is pellucid that the method for a purchaser at a foreclosure sale to acquire actual possession from a holdover mortgagor prior to the approval of the audit, the payment of the purchase price and the delivery of the conveyancing documents, if the purchaser chooses to use the judicial process, is the method provided for in Maryland Rule 14-102 and not that of § 8-402.4 of the Real Property Article. We merely discussed in *Laney* (a criminal case addressing the Fourth Amendment implications of whether a holdover mortgagor, following a foreclosure, has a reasonable expectation of privacy in the premises), that the use of the word "may" in the Rule indicates that, outside of the judicial process, "peaceable" self-help remedies can be pursued in order for a foreclosure sale purchaser to acquire actual possession. It does not mean, as Empire suggests, that alternate judicial means are available in the District Courts of this State wholly independent from Maryland Rule 14-102. Although Empire may seek to gain possession of the purchased property by filing a motion in the [c]ircuit [c]ourt under Maryland Rule 14-102(a), it cannot under these circumstances seek the same result from the District Court under § 8-402.4 of the Real Property Article.

*Empire Properties, LLC*, 386 Md. at 641, 873 A.2d at 1195 (emphasis and footnote omitted). This Court concluded that Md. Rule 14-102 was the only method Empire could pursue to acquire possession under the circumstances.

Uthus argues that *Empire* stands for the proposition that the word "may" can effectively refer to a required course of action. However, at the time that *Empire* was decided, self-help remedies for landlords were still legal. Our interpretation of *may* as non-exclusive in *Empire* referred to the multiple legal options that were then available to pursue: the judicial remedy under Md. Rule 14-102 and the otherwise legal remedy at the time, although not a judicial remedy, of self-help.[6] *Empire* does not stand for the proposition that *may* refers to a mandatory option.

---

[6] This Court, in *Nickens v. Mount Vernon Realty Grp., LLC*, 429 Md. 53, 62 54 A.3d 742, 747–48 (2012), upheld the common law usage of self-help evictions. Thereafter, the General Assembly abrogated *Nickens*, enacting Real Prop. § 7-113 into law "[for] the

(continued . . .)

19

To summarize, the wrongful detainer statute, Real Prop. § 14-132(d), states that a "person claiming possession *may* make complaint in writing to the District Court of the county in which the property is located." The permissive term *may* makes clear that wrongful detainer is one of the legal actions available to pursue when attempting to remove someone not legally on a property, but not the exclusive remedy. In the instant case, there were multiple legal remedies available for Valley Mill to pursue in order to repossess the apartment, i.e., wrongful detainer action in the District Court and common law trespass action in circuit court.[7] Because the wrongful detainer statute is a permissive statute and

---

(. . . continued)
purpose of prohibiting a party claiming the right to possession from taking possession or threatening to take possession of residential property from a certain protected resident in a certain manner[.]" 2013 Maryland Laws Ch. 514 (S.B. 642).

[7] The enactment of the wrongful detainer statute does not by any means imply that the General Assembly expressly intended to derogate the common law right to pursue a trespass action. This Court has a long history of affirming the proposition that "statutes in derogation of the common law are strictly construed, and it is not to be presumed that the Legislature by creating statutory [claims] intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Breslin v. Powell*, 421 Md. 266, 287, 26 A.3d 878, 891 (2011) (citations and quotation marks omitted); *State, for Use of Dunnigan v. Cobourn*, 171 Md. 23, 187 A. 881, 882 (1936) ("It seems beyond dispute that the right here asserted did not exist at common law, and that the statute which confers the right, being in derogation of the common law, must be construed strictly. Volume 2, Lewis' Sutherland Statutory Construction, § 632; *Demczuk v. Jenifer*, 138 Md. 488, 114 A. 471 [(1921)]; *Allen v. Seff*, 160 Md. 240, 153 A. 54 [(1931)]."). *See generally Robinson v. State,* 353 Md. 683, 728 A.2d 698 (1999) (discussing the proposition that statutes in derogation of the common law are to be construed narrowly, so as to not make any change in the common law beyond that which is expressly stated and necessary); 3 Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 61:1 (7th ed. 2017) ("A statute may take away a common law right, but courts presume the legislature has no such purpose. If a common law right is to be taken away, it must be noted clearly by the legislature.").

20

not a mandatory statute, we conclude that Valley Mill was not required to pursue a wrongful detainer action in District Court.[8]  Accordingly, Valley Mill was not required to pursue a wrongful detainer action to remove Uthus from the apartment, and the District Court would not have exclusive jurisdiction over this action under Cts. & Jud. Proc. § 4-401(4) ("The District Court has exclusive original civil jurisdiction in . . . an action involving . . . wrongful detainer.").[9]

**Trespass**

The longstanding common law tort of trespass is generally defined as "an intentional or negligent intrusion upon or to the possessory interest in property of another." *Litz v. Maryland Dep't of Env't*, 446 Md. 254, 276–77, 131 A.3d 923, 936 (2016) (internal quotation marks and citation omitted).  As the intermediate appellate court correctly surmised, to prevail in a trespass action a "plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force

---

[8] There would be times, though, that the wrongful detainer statute would not be an available remedy.  The wrongful detainer statute contains a limitation that a wrongful detainer action is not available when a "remedy is available under Title 8 of this article [Landlord and Tenant]; or any other exclusive means to recover possession is provided by statute or rule."  Real Prop. § 14-132(b)(2)–(3).  This does not change our analysis in this case, however, since common law trespass is not an "exclusive means to recover possession." Valley Mill still had the option whether to pursue a wrongful detainer action in district court or a common law trespass action in circuit court.

[9] Uthus argues that a person in actual possession "should not be vulnerable to eviction at the whim of a landowner or employer without going through the statutorily defined eviction process."  This argument fails to recognize that there is more than one "statutorily defined" or common law process to remove a person from a property, and nothing in our decision, or the Court of Special Appeals' opinion, leaves people possessing a property "at the whim of a landowner or employer" without sufficient legal process.

21

against that property; (3) which was executed without his consent." *Uthus v. Valley Mill Camp, Inc.*, 243 Md. App. 539, 555, 221 A.3d 1040, 1049 (2019) (citations omitted). In the instant case, all three elements are present.

The first element—interference with a possessory interest—requires Valley Mill to have a possessory interest in the campground and Uthus to interfere with that possessory interest. The undisputed facts indicate that Uthus interfered with Valley Mill's possessory interest in the campground by remaining in possession of his apartment after being told to leave.

Valley Mill's possessory interest in the campgrounds stems from its lease agreement with Seneca Joint Venture; Seneca Joint Venture owns the campgrounds and leases the property to Valley Mill. As noted above, a landlord-tenant relationship entitles the tenant to the right of possession to the exclusion of the landlord, and the converse is also true: a landlord has no right of immediate possession over a tenant legally in possession of a property. *Curtis*, 427 Md. at 536, 50 A.3d at 564 ("Under elementary principles of real property law, a tenant properly on the premises of a property has a right of possession as against a landlord. It follows that a landlord—or a person who has succeeded to the position of a landlord—would have no right of 'immediate possession' as against a tenant legally in possession of the property under [the relevant statute]."). As the tenant of the campgrounds, Valley Mill has the right of exclusive possession of the campgrounds, to the exclusion of Seneca Joint Venture. This means that although Uthus was a partner of Seneca Joint Venture, his status does not entitle him to possessory rights in the apartment on the campgrounds. Rather, Valley Mill maintains a possessory interest in the campgrounds.

22

As for the interference part—*interference* with the possessory interest—it is uncontroverted that Uthus remained in the apartment on the campgrounds after being asked to leave and continued to occupy the premises following the termination of his employment, thereby interfering with Valley Mill's possessory interest. Thus, the first element of trespass—interference with a possessory interest—is met.

The uncontroverted facts also meet the other elements of trespass. Uthus interfered with Valley Mill's possessory interest in the apartment by physically remaining there. The record does not reflect that Valley Mill consented to Uthus remaining on the property.

In sum, Valley Mill maintained a possessory interest in the apartment. Uthus interfered with that possessory interest by physically remaining on the property without Valley Mill's consent, thereby meeting all the elements of trespass.

## CONCLUSION

Valley Mill's common law trespass action against Uthus to recover possession of the apartment was properly within the jurisdiction of the circuit court. While cases presenting a "landlord and tenant, distraint, or wrongful detainer" issue, are exclusively in the jurisdiction of the District Court under Cts. & Jud. Proc. § 4-401(4), none of these apply here.

This is not a landlord-tenant dispute because Uthus was a licensee of Valley Mill and not a tenant. Strong indicia that Uthus was not a tenant include the lack of rental payments and exclusive possession. Additionally, Valley Mill was not required to file a wrongful detainer action in the District Court, although it could have. The wrongful detainer statute uses the term *may* which is permissive, so Valley Mill had the choice to

23

take legal action to remove Uthus from the campgrounds by either filing a wrongful detainer action in District Court or a trespass action in circuit court. Ultimately, Valley Mill sought repossession from Uthus via a common law trespass action in circuit court and established the elements of trespass: intentional interference with the possessory interest of another. Accordingly, we shall affirm.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**